The **PEOPLE of the State of Colorado**, Complainant,

v.

**Ann Frances STEWART, Attorney–Respondent.**

**No. 95SA40.**

Supreme Court of Colorado,
En Banc.

April 3, 1995.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Asst. Disciplinary Counsel, Denver, for complainant.

Michael L. Bender, Denver, for attorney-respondent.

**PER CURIAM.**

A hearing panel of the Supreme Court Grievance Committee approved the findings and recommendation of a hearing board that the respondent [1] be suspended from the practice of law for three years, with certain conditions placed on reinstatement. Neither the assistant disciplinary counsel nor the respondent excepted to the panel's action. The misconduct committed by the respondent was

---

1. The respondent was admitted to the bar of this court on October 25, 1989, is registered as an attorney upon this court's official records, and is subject to the jurisdiction of this court and its grievance committee in these proceedings. C.R.C.P. 241.1(b). By agreement between the assistant disciplinary counsel and the respondent, the respondent was immediately suspended from the practice of law on October 8, 1993, because of the allegations of misconduct forming the basis of the present proceeding.

serious and extensive. Nevertheless, for the reasons below, we accept the panel's recommendation.

I

The respondent and the assistant disciplinary counsel entered into an unconditional "stipulation of facts and rule violations." Based on the stipulation, the testimony of the respondent and her expert witness, and the respondent's exhibits, the hearing board found that the following facts were established by clear and convincing evidence.

A

While an associate for a law firm, the respondent was issued a credit card for business expenses. In May 1992, the respondent, who was suffering from depression and other physical and emotional problems, was required to leave her condominium. She moved into an inn, and, without the law firm's authorization, used the firm's credit card to guarantee payment of the hotel bill. When the respondent left without checking out, the inn charged expenses totalling $1,431.60 to the law firm's credit card. The respondent denied the charges when the firm confronted her with them.

The respondent was staying at a second inn when she denied the credit card charges. She gave the second inn her personal check for $1,245.26 upon checking out, but the check was returned twice because of insufficient funds, and the inn submitted the charges using an imprint of the firm's credit card supplied by the respondent.

The law firm fired the respondent in August 1992. The respondent's check to the firm in partial payment of the credit card charges was twice returned due to insufficient funds. The law firm was eventually repaid for the unauthorized charges made by the respondent.

As the hearing board concluded, the respondent's conduct violated DR 1–102(A)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); and DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law).

B

The respondent started a sole law practice in the fall of 1992. She was approached by a nonlawyer who suggested that she could represent more clients if he took charge of marketing and management, and organized her office so that all preliminary matters would be handled by him and others, freeing her to make court appearances. The respondent agreed to employ the nonlawyer.

In November 1992, a prospective client sought the respondent's representation on traffic charges of speeding and driving with no insurance. The client's first meeting was with the nonlawyer assistant, who advised him about the consequences of a plea, of the possible fine, and that an arrangement could be made whereby the payment of any fine could be delayed to enable the client to pay attorney fees.

The board concluded that the respondent aided a nonlawyer in the unauthorized practice of law by failing to properly supervise the nonlawyer, failed to promptly return any money that the client had paid after providing no services and effectively withdrawing from the case, and failed to appear in court on behalf of the client. The respondent thereby violated DR 2–110(A)(3) (a lawyer who withdraws from employment shall refund promptly any unearned attorney's fees); DR 3–101(A) (a lawyer shall not aid a nonlawyer in the unauthorized practice of law); and DR 6–101(A)(3) (a lawyer shall not neglect a legal matter entrusted to the lawyer).

C

A client hired the respondent in November 1992 to defend him in two separate traffic matters, and initially met with the nonlawyer assistant and paid him a flat fee of $200 for the representation. The respondent did not move to continue either of two hearings and did not appear at the hearings, resulting in a default judgment in one case and a failure to appear charge in the other case. She also did not surrender documents and photographs to the client as requested after he discharged her, and she failed to promptly

account for or return the client's funds. She thereby violated DR 6–101(A)(3) (neglect).

As in many of the unprofessional matters involved in this proceeding, the respondent's misconduct occurred both in 1992 and 1993, and therefore violated both the Code of Professional Responsibility and the Rules of Professional Conduct. On and after January 1, 1993, the effective date of the Rules of Professional Conduct (R.P.C.), she breached R.P.C. 1.3 (neglect of a legal matter), R.P.C. 1.4(a) (failure to communicate with a client), R.P.C. 1.15(b) (failure to return client funds and render a full accounting), R.P.C. 1.16(d) (upon termination of representation, a lawyer shall refund any advance payment of fee that has not been earned). The respondent also failed to respond appropriately to a number of requests for investigation filed in this proceeding, contrary to C.R.C.P. 241.6(7) (failure to respond to a request by the grievance committee without good cause shown, or obstruction of the committee or any part thereof in the performance of its duties constitutes ground for lawyer discipline).

### D

Another client hired the respondent to institute a dissolution of marriage proceeding against her common-law husband. At her first appointment in October 1992, the client met with the nonlawyer assistant, who advised her that a petition for dissolution, including a claim for child support, would be filed as soon as she moved out. When the client moved out with her son, she again met with the nonlawyer assistant. She paid him a retainer and a filing fee.

The respondent failed to file the dissolution of marriage action, however, and filed no response or entry of appearance in a paternity action initiated by the client's husband. The respondent did not return the opposing lawyer's telephone calls, failed to return a proposed stipulation in the paternity action, did not attend or notify her client of a scheduled temporary orders hearing resulting in the award of temporary custody of the son to the husband, did not return the client's money or provide an appropriate accounting of her fees, and aided a nonlawyer in the prac-

tice of law by not properly supervising the nonlawyer.

Her conduct violated DR 3–101(A) (aiding a nonlawyer in the unauthorized practice of law), DR 6–101(A)(3) (neglect of a legal matter), DR 9–102(B)(4) (a lawyer shall promptly pay or deliver to the client as requested by the client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive); as well as R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to communicate with a client); and 1.15(b) (failure to return client funds and render a full accounting).

### E

In eleven further separate legal matters in 1992 and 1993, the respondent was hired to represent clients in dissolution of marriage, annulment, and legal separation actions. In most cases, the client would meet first with the respondent's nonlawyer assistant, and pay him a retainer. In some cases, the nonlawyer assistant would dispense legal advice to the clients. The respondent often would not file any dissolution petition or would neglect the matter in other ways, would make negligent misrepresentations to the court, would not communicate with her clients personally, would fail to provide an accounting of her services upon request, would not properly supervise and monitor her assistants, would fail to properly withdraw from representation upon being discharged, and would not return unearned retainers in a timely manner.

Her unprofessional conduct in these additional matters violated DR 3–101(A) (aiding a nonlawyer in the unauthorized practice of law), DR 6–101(A)(3) (neglect), DR 9–102(B)(3) (failure to maintain complete records of client property in the possession of the lawyer and to render appropriate accounts to the client regarding the property), and DR 9–102(B)(4) (failure to promptly pay as requested by the client the funds the client is entitled to receive). On and after January 1, 1993, the respondent violated R.P.C. 1.3 (neglect), R.P.C. 1.4(a) (failure to communicate with a client), R.P.C. 1.15(b) (failure to return client funds and render a full accounting), R.P.C. 1.16(a)(3) (a lawyer

shall withdraw from the representation of a client if the lawyer is discharged), R.P.C. 1.16(d) (upon termination of representation, a lawyer shall refund any advance payment of fee that has not been earned), R.P.C. 5.3(b) and (c) (fail to properly supervise a nonlawyer assistant), and R.P.C. 5.5(b) (aid a person not a member of the Colorado bar in the unauthorized practice of law).

## II

The hearing panel approved the board's recommendation that the respondent be suspended for three years, and that certain conditions be placed on the respondent's reinstatement. As the hearing board recognized, under the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA Standards), in the absence of mitigating factors, disbarment is generally appropriate when "a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client." ABA *Standards* 4.41(c). *See, e.g., People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994) (lawyer disbarred for knowingly failing to perform services for clients and engaging in pattern of neglect of client matters, and causing potentially serious injuries to clients); *People v. Williams*, 845 P.2d 1150, 1152 (Colo.1993) (disbarment warranted when lawyer neglects legal matter, fails to return client's retainer, evades service of process, fails to respond to request for investigation, and abandons practice); *People v. Dulaney*, 785 P.2d 1302, 1305 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect).

In aggravation, the respondent had a dishonest or selfish motive, ABA *Standards* 9.22(b); and there is a pattern of misconduct, *id.* at 9.22(c); as well as multiple offenses, *id.* at 9.22(d). The hearing board nonetheless concluded that disbarment was too severe, based on the presence of factors in mitigation.

The parties stipulated that the respondent has no prior disciplinary history, *id.* at 9.32(a); there is the presence of personal or emotional problems, *id.* at 9.32(c); the respondent made full and free disclosure to the hearing board and was cooperative in the proceedings, *id.* at 9.32(e); the respondent was inexperienced in the practice of law having practiced only three years when the misconduct occurred, *id.* at 9.32(f); the presence of a physical disability or impairment, *id.* at 9.32(h); and the respondent has demonstrated remorse for the misconduct, *id.* at 9.32(*l*).

The board found most significant and persuasive, however, the respondent's expert evidence indicating that during the time of the misconduct in this case, the respondent suffered from bulimia and severe depression, as well as hypothyroidism, and a personality disorder with a dependent aspect. It was during a time of particular vulnerability, after being discharged from her law firm, that the respondent met and became associated with the nonlawyer assistant who contributed to or caused many of the respondent's ethical problems. In fact, the board found that the respondent agreed to the order of immediate suspension in this case, *see* note 1, *supra*, in part in order that counsel could be appointed to inventory her files and gain control of the files that the nonlawyer assistant controlled. *See* C.R.C.P. 241.25(h).

The board determined that the respondent was afflicted with a mental disorder that caused the misconduct. *See* ABA *Standards* 9.32(i)(1), (2); *People v. Lujan*, 890 P.2d 109, 112 (Colo.1995). The respondent has been, and continues to be, under treatment for her physical and mental disabilities. The board found, however, that the respondent's recovery from her mental disabilities has not yet been demonstrated by a meaningful and sustained period of rehabilitation, and that it cannot be established at this time that recurrence of the misconduct is unlikely. The board therefore recommended a three-year suspension, with the added condition for reinstatement that the respondent show by competent psychiatric and medical evidence that the respondent's physical and mental condition does not interfere with her ability to practice law.

Although the question is a close one, we conclude that the presence of these mitigating factors, and the respondent's cooperative attitude and her understanding of her mis-

conduct, serve to distinguish this case from others where disbarment was considered necessary. *See, e.g., Murray*, 887 P.2d at 1021. We believe that a three-year suspension with the conditions noted by the hearing panel and board will adequately serve to protect the public. Accordingly, we accept the panel's recommendations.

## III

It is hereby ordered that Ann Frances Stewart be suspended from the practice of law for three years, effective immediately upon the issuance of this opinion. *See* C.R.C.P. 241.21(a). It is further ordered that the respondent must comply with C.R.C.P. 241.22(b)–(d) before she may be reinstated. It is also ordered that the respondent, as a condition for reinstatement, show by competent psychiatric and medical evidence that her physical and mental condition does not interfere with her ability to practice law. It is also ordered that the respondent pay the costs of this proceeding in the amount of $1,568.35 within sixty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202.