The PEOPLE of the State Of
Colorado, Complainant.

v.

Karen S. MILNER, Respondent.

Nos. 99PDJ030, 99PDJ093.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Aug. 7, 2001.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board member THOMAS J. OVERTON and BETH L. KRULEWITCH, both members of the bar.

## OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: ATTORNEY DIS-BARRED*

This Opinion concerns two separate disciplinary matters, Case No. 99PDJ030 and Case No. 99PDJ093 resulting in two separate sanctions hearings held on March 15, 2000 and June 7, 2000 respectively. In Case No. 99PDJ030, the People filed an initial Complaint on June 22, 1999. Milner filed an Answer through counsel on July 20, 1999. Milner's counsel subsequently moved to withdraw, and the PDJ granted the motion to withdraw on October 6, 1999. The People filed an Amended Complaint on September 2, 1999. Respondent failed to file an Answer thereto, and on January 4, 2000, the PDJ entered default as to the factual allegations contained in the Amended Complaint in Case No. 99PDJ030. A sanctions hearing was held on March 15, 2000, before the Presiding Disciplinary Judge ("PDJ") and two Hearing Board members, Thomas J. Overton and Beth L. Krulewitch, both members of the Bar. James S. Sudler, Assistant Regulation Counsel, represented the People of the State of Colorado (the "People"). Karen S. Milner ("Milner") appeared *pro se*. The People's exhibits 1 through 12 were admitted by stipulation into evidence. The following witnesses testified on behalf of the People: Martin W. Boroos, Cherry Fay Chavez, Anisa K. Moore f/k/a Anisa Machina, Nancy Aldridge, and Jana M. Fisher.

Following the sanctions hearing in Case No. 99PDJ030 on March 15, 2000, the People requested that the same Hearing Board be appointed to hear Case No. 99PDJ093, and that the PDJ and Hearing Board delay their ruling on the first matter until the second matter had been heard. Milner did not object to the People's request.

In Case No. 99PDJ093, the People filed the Complaint and Citation on November 18, 1999.[1] Milner failed to file an Answer, and on March 7, 2000, the PDJ entered default as to the factual allegations in the Complaint, granted default on numerous claims and denied default on numerous other claims.[2] On June 2, 2000, the People moved to dismiss those claims upon which default had not been granted, and on June 6, 2000, the PDJ granted respondent's motion. On June 7, 2000, the PDJ and the same Hearing Board that presided over Case No. 99PDJ030 held a sanctions hearing. James S. Sudler represented the People. Milner appeared *pro se*. The People's exhibits 1 and 2 were offered and admitted into evidence.

In both matters, the PDJ and Hearing Board considered argument of counsel, the facts and claims established by the entry of default, assessed the testimony of the witnesses, reviewed the exhibits admitted, made the following findings of fact which were established by clear and convincing evidence and the following conclusions of law.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Case No. 99PDJ030

*Claim I: The Aldridge Matter*

On April 4, 1998, Milner entered her appearance on behalf of Nancy Aldridge in a child support and visitation matter. Between April and June 1998, the client paid Milner fees and costs in the amount of $735. A hearing was scheduled regarding visitation issues and subsequently rescheduled. Milner failed to notify the client of the new hearing date. One week prior to the rescheduled hearing, Milner contacted the client and demanded that she pay fees in the amount of $385 or Milner threatened to withdraw. The client paid the fees. At the hearing, the client expressed concern to Milner about her visitation rights while her children were with their father for a six-week

period. Milner assured her she would be allowed visitation. Subsequent to the hearing on July 16, 1998, the client left numerous messages for Milner but Milner did not return her calls. The client spoke to Milner's paralegal, Matthew Kemp ("Kemp"), who stated that a motion to clarify the issue of visitation would be filed with the court. Milner failed to file any such motion.

Milner agreed to obtain a wage assignment from the client's ex-husband's employer and file it with the court. Subsequently the client, who was not receiving child support, attempted to contact Milner to determine whether the wage assignment had been submitted to the court. For approximately six weeks, Milner failed to respond. Finally, the client spoke with Kemp who promised that the papers would be filed. They were not. After numerous phone calls, the client contacted Kemp in October 1998 who assured her that the wage assignment documents had been sent to opposing counsel; he stated he would contact opposing counsel and advise the client of the status of the assignment. The client had no further contact with Milner after July 1998 and none with Kemp after October 1998. Milner did no further work on the case and did not file a motion to withdraw.

Milner's failure to act on behalf of her client resulted in harm to the client: Aldridge was not able to obtain visitation while her children were with their father; she was forced to seek an alternative method to obtain a wage assignment, and her frustration and concern caused by Milner impacted her work performance. Milner did not refund any of the funds to the client. Milner's failure to return the client's phone calls and her failure to communicate with the client constituted a violation of Colo. RPC 1.4(a)(lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); her failure to notify the client of the change in hearing date, her

---

1. The Supreme Court immediately suspended Milner on October 28, 1999 in Case No. 99PDJ093.

2. The Order denied default as to the following alleged violations in Case No. 99PDJ093: claim two, Colo. RPC 5.5(b), claim four, Colo. RPC 1.1 and Colo. RPC 1.3, claim five, Colo. RPC 1.15(b), Colo. RPC 5.3(a), and Colo. RPC 1.15(d).

failure to file a motion concerning the client's visitation rights; and her failure to file a wage assignment on behalf of her client constitutes neglect in violation of Colo. RPC 1.3. Milner's paralegal, Kemp, misrepresented the status of the matter to the client. Milner failed to adequately supervise Kemp to assure that he did not make such misrepresentations. Her failure to do so constitutes a violation of Colo. RPC 5.3(b)(lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer).

### Claim II: The Cordova Matter

On September 22, 1998, Darlene Cordova met with Kemp and Milner to determine whether to retain Milner in the client's divorce action. The client was advised that the initial consultation was free. Milner was not present for most of the meeting. Kemp told the client that she would be charged a fee of $75 per hour or a flat fee of $1,500 but he did not say which, and the client was not provided with a written fee agreement. The client paid $400. Milner billed the client $100 per hour rather than the $75 per hour rate which the client had been quoted, and she charged for the initial consultation which she represented at the time of the meeting would be free of charge.

Milner met with the client to discuss service upon the client's husband. Milner stated that the husband would be served on October 12, 1998. The client received no response to her calls on October 12 and 13 to determine if service had been completed. Service was effected the following day. Milner met with the client on October 17, 1998 and stated that the petition for dissolution of marriage would be filed on October 20, 1998, and that the client would be contacted immediately thereafter. The petition was not filed on October 20, 1998; it was filed the following day. On October 26, 1998, the client went to Milner's office to retrieve her file. Kemp was abusive towards her and threatened to call the police.

Milner failed to adequately communicate the basis of her fee to the client before or within a reasonable time after commencing her representation in violation of Colo. RPC 1.5(b)(lawyer shall communicate the basis or rate of the fee within a reasonable time after commencing representation). The Amended Complaint charged a violation of Colo. RPC 1.4(a), which requires a lawyer to keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. The PDJ and Hearing Board cannot find by a clear and convincing standard that Milner violated Colo. RPC 1.4(a) in the Cordova matter. Milner and/or Kemp spoke with Cordova within a reasonable time on each occasion the client called. Accordingly, the alleged violation of Colo. RPC 1.4(a) in claim two of Case No. 99PDJ030 is dismissed. Milner failed to adequately supervise Kemp to ensure that Kemp's conduct was compatible with the professional obligations of a lawyer in violation of Colo. RPC 5.3(b)(failure to adequately supervise nonlawyer).

### Claim III: The Wilhelm Matter

Milner met with Mr. Wilhelm and entered into an attorney-client relationship with him to collect monies owed pursuant to a promissory note. At the meeting, Milner obtained the original or a copy of the promissory note. Subsequently, Milner did not take any action regarding the case. Despite the client's attempts to communicate with her and his requests that she return the promissory note to him, she failed to do so, and failed initially to provide it when the Office of Attorney Regulation Counsel ("OARC") requested it. Eventually, she provided OARC with a copy of the note.

Milner's failure to return the original or a copy of the client's promissory note upon the client's request constitutes a violation of Colo. RPC 1.15(b)(a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to received and render a full accounting regarding such property). Her failure to respond to the client's telephone calls and failure to communicate with him regarding the status of the matter constitutes a violation of Colo. RPC 1.4(a)(failure to communicate). Milner's failure to take any action on behalf of the client after agreeing to represent him

constitutes neglect in violation of Colo. RPC 1.3(lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect a legal matter entrusted to the lawyer).

### Claim IV: The Chavez Matter

On March 31, 1998, Milner and Kemp met with Cherry Chavez regarding a divorce action. The client paid Milner $600 for fees and costs to represent her in the divorce. The client was told that if she and her husband could agree on settlement, Milner could complete all the paperwork. Kemp offered to assist the client and her husband as a mediator. The client and her husband met with Milner and Kemp again on April 11, 1998 to discuss their divorce, and agreed on all matters except child support. Milner stated that she would prepare a petition for dissolution of marriage and, in the meantime, the husband would consider the issue of child support. Thereafter, the client heard nothing from Milner, but was able to contact Kemp on several occasions, who indicated that the delay in preparing the petition for dissolution was caused by the client's husband's failure to cooperate. In fact, Kemp never attempted to speak with the client's husband. On June 22, 1998, a meeting was scheduled with the client and her husband to review the petition for dissolution. When the client and her husband arrived, both Milner and Kemp were unavailable. Milner's secretary reviewed the documents and stated that they would be filed with the court within the next few days. The client thereafter attempted to contact Milner regarding the status of the case but received no response until late August, when Milner stated that the petition would be filed on or before September 1. Thereafter, Chavez again had difficulty contacting Milner, but spoke to Kemp. Kemp was abusive to Chavez and said he was not aware of the status of the case. On September 24, 1998, the client successfully contacted Milner who stated that the petition had been filed. The client contacted the court clerk's office in early October and was told that no petition had been filed. After the client contacted OARC, Milner filed the petition for dissolution on behalf of Chavez.

Milner's failing to file the petition in a timely fashion delayed the divorce.

■ Milner's failure to communicate with the client regarding the status of the case despite repeated attempts by the client constituted a violation of Colo. RPC 1.4(a)(failure to communicate). Milner's failure to timely file the petition constitutes neglect in violation of Colo. RPC 1.3(neglect of a legal matter). Milner's statement to the client that she had filed the petition when in fact she had not was conduct involving misrepresentation when, at the time, she knew it had not been filed, was a violation of Colo. RPC 8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation).

■ Kemp's knowing misrepresentation to Chavez that the delay in filing the divorce action was caused by the husband when it was not is conduct which would not be tolerated if undertaken by a lawyer. As a paralegal to Milner, it was Milner's responsibility to take reasonable efforts that his conduct was compatible with her professional responsibilities. She did not take such steps. Consequently, Milner failed to adequately supervise Kemp in violation of Colo. RPC 5.3(b)(failure to supervise a nonlawyer).

### Claim V: The Fisher Matter

In April 1998, Jana Fisher retained Milner in connection with a divorce and to secure a temporary restraining order. In August 1998, Milner represented the client at a permanent orders hearing. The court ordered Milner to submit the permanent orders within thirty days of the hearing. Milner did not do so. The court issued an Order to Show Cause why Milner should not be sanctioned for failure to timely file the permanent orders. A hearing on the Order to Show Cause was set for November 24, 1998. Milner did not provide the client with a copy of the Show Cause Order. Milner filed the permanent orders on November 23, 1998, and the Show Cause Order was vacated. Thereafter, Fisher tried on several occasions to contact Milner because the permanent orders required her to refinance her house within one hundred and twenty days. She needed a copy of the permanent orders to refinance the house. Unable to reach Mil-

ner, the client spoke with Kemp who told her to "stop calling and bitching." Milner did not provide the client with a copy of the permanent orders.

 Milner's failure to timely submit an order to the court regarding the terms of the permanent orders violated Colo. RPC 1.3(neglect of a legal matter). Milner's failure to communicate with the client following the permanent orders hearing despite the client's repeated attempts to reach her constituted a violation of Colo. RPC 1.4(a)(failure to communicate). By failing to timely submit an order to the court regarding the terms of the permanent orders, Milner knowingly disobeyed obligations under the rules of a tribunal in violation of Colo. RPC 3.4(c)(knowingly disobeying an obligation under the rules of a tribunal), resulting in prejudice to the administration of justice in violation of Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice). With regard to the alleged violation of Colo. RPC 5.3(b)(failure to adequately supervise a nonlawyer), that allegation is premised solely upon Kemp's outburst with Fisher to "stop calling and bitching." Although lacking in tact, not conducive to a harmonious attorney/client relationship and certainly below the level of professionalism to which the profession must aspire, the PDJ and Hearing Board do not conclude that a single impolite outburst toward a client constitutes conduct incompatible with the professional obligations of a lawyer. Accordingly, the charged violation of Colo. RPC 5.3(b) in claim five is dismissed.

### Claim VI: The Abrahamson Matter

In April 1998, Norma Abrahamson retained Milner to assist her in recovering payment of a loan. The parties verbally agreed that Milner would be paid $250 out of the proceeds. Not having heard from Milner, Abrahamson contacted her in June to inquire into the status of the case. Milner admitted she had forgotten the matter, and would take action to proceed at that time. Despite several attempts, it was not until late August that the client was able to speak again with Milner, and Milner informed her that an injunction had been ordered. In October, the client attempted to speak with Milner and instead spoke with "Matthew" of Milner's office, who was unable to give her any information on the case. The client thereafter sent a letter to Milner inquiring about the status of the case. Between October 1998 and January 1999 the client called Milner on six occasions and Milner neither returned her calls nor responded to the letter.

 Between April 1998 and June 1998, Milner "forgot" about the case and took no action on it. By agreeing to represent a client in a dispute and then failing to take those ministerial steps necessary to ensure that the matter is not "forgotten," Milner violated Colo. RPC 1.3. The facts reveal repeated failures to communicate with the client regarding the status of the case and therefore establish a violation of Colo. RPC 1.4(a)(failure to communicate). Milner is also charged with violating Colo. RPC 1.16(d) and Colo. RPC 1.15(b) based upon these facts. Colo. RPC 1.16(d) provides:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

The opening phrase of Colo. RPC 1.16(d) requires "[u]pon termination of representation...." No evidence was presented that Milner's representation was terminated, nor is there an allegation of abandonment. Consequently, the PDJ and Hearing Board conclude that the charge under Colo. RPC 1.16(d) in claim six in Case No. 99PDJ030 was not established and is therefore dismissed. Colo. RPC 1.15 provides:

> Safekeeping Property: Interest–Bearing Accounts to be Established for the Benefit of the Client or Third Persons or the Colorado Lawyer Trust Account Foundation: Notice of Overdrafts; Record Keeping. (b) Upon receiving funds or other property in which a client or third person has an

interest, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client, deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property.

The People contend that Milner violated Colo. RPC 1.15(b) by virtue of her failure to return the promissory note and other documents to Abrahamson. There is no evidence, however, that the representation of the case was concluded, or the client had requested the return of documents. The only evidence presented was that Milner told Abrahamson that an injunction had been ordered.[3] Although it is possible to surmise that Milner did not undertake the requisite efforts necessary to obtain recovery on the note in light of the remaining facts in other claims of the Amended Complaint, surmise is not proof by clear and convincing evidence. Absent some evidence establishing a termination of the representation, the conclusion of the case, or a request by the client, the PDJ and Hearing Board cannot conclude that Milner violated Colo. RPC 1.15(b) by failing to return documents and the promissory note prior to the end of January 1999. Accordingly, the alleged violation of Colo. RPC 1.15(b) in claim six in Case No. 99PDJ030 is dismissed.

### Claim VII: The Spargo Matter

In June 1998, Sherry Spargo retained Milner to represent her in a divorce. The client paid Milner a total of $800 in fees and $124 in costs. Thereafter, Spargo had minimal contact with Milner. Milner failed to notify the client of the permanent orders hearing date until a few days prior to the hearing. Pursuant to the permanent orders, Milner agreed to submit a wage assignment for child support to the employer of the client's husband and failed to do so. The client attempted to contact Milner regarding the wage assignment, but Milner did not return her phone calls. Milner filed the wage assignment after

the client made a request for investigation with the OARC.

Milner's failure to communicate adequately with the client regarding the status of the matter and timely notify the client of the scheduled permanent orders hearing constitutes a violation of Colo. RPC 1.4(a)(failure to communicate). Milner's failure to timely notify the client of the permanent orders hearing, and her failure to file a wage assignment for child support until after the client had contacted OARC constitutes neglect of a legal matter in violation of Colo. RPC 1.3(neglect).

### Claim VIII: The Boroos Matter

June Hallinan died on September 18, 1998. In Hallinan's will, Mr. and Mrs. Boroos were named as Ms. Hallinan's sole beneficiaries and Milner was designated as the personal representative of the estate. On the date of death, Hallinan's trailer home was sold for $3,800. Hallinan also owned an automobile at the time of her death. Milner advised the beneficiaries that she had taken the automobile to her home for safekeeping. The beneficiaries discussed selling the vehicle to Milner, but did not finalize any agreement. Subsequently, they conducted a title search and learned that title to the car had been transferred to Milner's husband on October 20, 1998.

In December 1998, one of the beneficiaries met with Milner and requested a listing of the estate's assets. Milner failed to provide one. In January 1999, the beneficiaries met with Milner to discuss and close the estate. However, Milner had not prepared for the meeting nor did she provide to the beneficiaries a list of expenses and assets or any written statement concerning the amount of the final distribution under the estate. She did not show the beneficiaries any bills or bank statements and was not sure of the amounts she provided verbally. Milner scheduled a subsequent meeting in January. By letter, the beneficiaries requested a written statement summarizing the disposition of

---

3. Although the issuance of an injunction in a promissory note case seems curious, that state-

ment by Milner suggests that a case was filed.

assets of the estate. Milner did not respond to the letter. In January, the beneficiaries called Milner several times but Milner did not return their calls. On at least one occasion, the beneficiaries spoke to Kemp, who informed them that the estate was not completed because other claims were being filed against it. This statement was false; there were no other claims filed against the estate. In February 1999, the beneficiaries contacted the court and learned that the will of the deceased had not yet been filed. Thereafter, despite numerous requests by the beneficiaries, Milner failed to provide an accounting of the estate assets and failed to distribute the proceeds of the estate to its beneficiaries. The beneficiaries hired an attorney who wrote to Milner and requested information regarding the status of the estate and demanded the estate files. Milner neither responded nor provided the files to the beneficiaries' attorney. Thereafter, the beneficiaries obtained an order of court removing Milner as personal representative of the estate and appointing one of the beneficiaries as successor personal representative. The order directed Milner to provide all bank account records, all funds or property of the estate, records of Milner's law office trust account, the original will, the estate files, and records relating to the transfer of the vehicle. Milner did not provide the documents ordered by the court. The successor personal representative obtained the deceased's personal bank records and the estate's bank records himself. In April or May 1999, after the beneficiaries had made a request for investigation with the OARC, Milner made a distribution from the estate in the amount of $8,000, but did not provide any documentation or explanation for the $8,000. Milner eventually paid all but $1,071 owed to the beneficiaries.

■■■■■ Milner's actions resulted in harm to the beneficiaries resulting in an attempt to deprive them of their inheritance, causing them extreme stress and expenditure of time and research and requiring that they hire counsel. Milner's failure to promptly deliver to the beneficiaries of the estate funds or other property that the beneficiaries were entitled to receive and, upon request by the beneficiaries, render a full accounting with regard to such property constitutes a violation of Colo. RPC 1.15(b)(lawyer shall promptly deliver to the client or third person any funds or other property the client or third person is entitled to receive and, upon request, render a full accounting). Milner retained property and funds belonging to the beneficiaries long beyond any period of time justifiable by virtue of her position as personal representative. Milner's conduct in acquiring the deceased's vehicle without finalizing a purchase agreement, transferring title of the vehicle to her husband and failing to disclose her actions in the face of requests to do so by the beneficiaries constitutes conduct involving dishonesty, fraud, deceit and misrepresentation in violation of Colo. RPC 8.4(c). The Amended Complaint charged Milner with a violation of Colo. RPC 8.4(h)(engaging in conduct that adversely reflects on the lawyer's fitness to practice law). Colo. RPC 8.4(h) requires proof that the lawyer engaged in conduct, the totality of which reflects that she lacked the personal or professional moral and/or ethical qualifications required of those authorized to practice law. Conduct involving violence, lack of honesty, violation of trust, serious interference with the administration of justice, criminal endeavors, or comparable misconduct is required to establish a violation of Colo. RPC 8.4(h). *See People v. Cleland*, No. GC98B118, slip op. at 9, 10 (Colo. PDJ September 17, 1999) 28 Colo. Law. 127, 128–129 (November 1999); *People v. Theodore*, 926 P.2d 1237, 1242–43 (Colo.1996)(holding that attorney's engaging in conduct involving dishonesty amounts to conduct that adversely reflects on his fitness to practice law). Viewing the totality of Milner's misconduct in the context of acting as personal representative of an estate as a serious violation of trust, the PDJ and Hearing Board find that such misconduct constitutes a violation of Colo. RPC 8.4(h).

■■■■ The remaining charge in this claim,[4] Colo. RPC 1.3(a lawyer shall act with reason-

---

4. Upon the People's motion at the closing of the sanctions hearing, the alleged violation of Colo. RPC 1.4(a) in claim eight was dismissed with prejudice.

able diligence and promptness in representing a client) requires the existence of an attorney/client relationship. No evidence was presented to establish that Milner acted in any capacity other than as the personal representative of the estate. Such a capacity does not, in and of itself, create an attorney/client relationship. Consequently, the charged violation of Colo. RPC 1.3 in claim eight in Case No. 99PDJ030 is dismissed.

### Claim IX: The Machina Matter

In November 1998, Anisa Machina hired Milner to represent her in a divorce proceeding. The client paid Milner an advance fee of $1,200. In January 1999, Kemp told the client that he had personally delivered papers to the client's husband and provided copies to him by certified mail. The client asked for proof of service on her husband and Kemp said he could not provide her with copies of the certified mail acceptance. The client made an appointment to meet with Milner and asked that she be provided with her husband's acceptance of certified mail. Milner stated that she would provide the client with receipt of the certified mail at the meeting. On January 30, 1999, the client met with Milner and again requested a copy of the receipt of certified mail. It was not provided to her. Milner said she would mail it to the client, and failed to do so. Thereafter, the client heard nothing more from Milner concerning the divorce proceeding.

Machina attempted to contact Milner on several occasions after January 30, 1999, to determine the status of her case and the date of the hearing. Milner did not return her calls. Finally, Machina successfully contacted Milner and told her she wished to terminate her services, and demanded a refund of a portion of the funds paid to Milner. Milner told Machina she could only refund $600 to $800 due to the service fees encountered in serving the husband in the dissolution case. Milner did not, however, refund the $600 to $800 as requested. Indeed, Milner made no refund to Machina until April 1999 after a request for investigation had been filed with the OARC.

The client paid Milner $1,200 for her professional services regarding the client's divorce action. The client terminated Milner's services and requested a refund of a portion of the fees she had paid to Milner. Upon such a request it is the obligation of the attorney to promptly refund any unearned fees. Milner failed to do so. Milner delayed making any refund for approximately two months and did so only after a request for investigation had been filed. Milner's failing to promptly provide a refund upon request by the client constituted a violation of Colo. RPC 1.15(b)(lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive). Milner's failure to return Machina's phone calls after January 30, 1999, constituted a failure to keep the client reasonably informed about the status of a matter and promptly comply with reasonable requests for information in violation of Colo. RPC 1.4(a).

### B. Case No. 99PDJ093

### Claim I: The Nelson Matter

In June 1998 Milner entered into an attorney/client relationship with Jannette Nelson who sought her assistance regarding the investigation into the death of her brother. The client paid Milner $2,000 and provided Milner with complete copies of the police file, medical reports, and the names and addresses of those who might have relevant information. Milner promised to investigate the death thoroughly, and told the client that she would schedule a meeting with the Denver District Attorney and the Denver Police Department. Milner and Kemp both assured the client that they would keep her informed of the status of the case.

A meeting was scheduled with the client, Milner and other individuals whom Milner had allegedly involved in the investigation. When the client went to the meeting, only Kemp was present, who told the client the meeting would have to be rescheduled. At the end of October 1998, Milner told the client that she had scheduled a meeting with the Denver Police Department and the Denver District Attorney for November 12, 1998, and that all the necessary work for the meeting had been done. Milner later admitted that she had never arranged such a meeting

with the Denver District Attorney and other parties. Milner promised to call the client but failed to call. When the client inquired about the scheduled meeting, she was told that none had been scheduled. Milner spoke to the client shortly thereafter and said that a report was being prepared regarding the case. From the second week of November 1998, to the third week of March 1999, the client repeatedly contacted Milner who said that she was revising the report. Milner scheduled meetings with the client and later cancelled them. The client decided to terminate Milner and told Milner's secretary that she wanted to pick up her file. Milner then told the client that the report would be sent to her and to the Denver District Attorney by courier. The client did not hear from Milner again despite many attempts to reach her. Milner never sent a report to the client. The client requested by letter that Milner return the $2,000 in fees she had paid to her. Milner never responded to the client.

▮▮▮ Milner agreed to represent the client and investigate her brother's death and thereafter took no action on the case from June 1998 to March 1999. Her neglect of the client's matter constituted a violation of Colo. RPC 1.3. Milner's failure to keep appointments with the client, and failure to return the client's phone calls from June 1998 to March 1999 constituted a violation of Colo. RPC 1.4(a)(failure to communicate). Milner's taking $2,000 as payment for her professional services and failing to take any action from June 1998 through March 1999 on behalf of the client constituted the charging of an unreasonable fee in violation of Colo. RPC 1.5(a)(a lawyer's fee shall be reasonable). Milner's failure to return the file and the client's funds to the client upon request constituted a violation of Colo. RPC 1.15(b)(a lawyer shall promptly deliver to the client any funds or property that the client is entitled to receive). Milner's failure to take steps to the extent reasonably practicable to protect the client's interests upon termination, and failure to surrender papers and property to which the client was entitled including refunding any advance payment of fee that has not been earned constitutes a violation of Colo. RPC 1.16(d)(upon termination of representation, a lawyer shall take

steps to protect a client's interests, including surrendering papers or property to which client is entitled).

▮▮▮ Milner's misrepresentations to the client that she had: sent a letter to a possible witness on the client's behalf; scheduled numerous meetings and drafted a report when she had not, as well as her failure to return the client's funds when she performed none of the professional services for which she was paid from June 1998 to March 1999 constituted dishonesty in violation of Colo. RPC 8.4(c).

*Claim II: The Biggers Matter*

In May 1999 Cindy Biggers went to Milner's law office seeking professional help with a bankruptcy and divorce. She met with Milner, Kemp and a woman named "Patti." Milner stated that she would charge the client $1,000 to handle both her bankruptcy and her divorce. The client paid Milner $969. Milner stated that Kemp would be working on the client's matters. Milner prepared and filed a petition for dissolution of marriage, but took no further action in the divorce proceeding on behalf of the client. Milner took no action whatsoever in the bankruptcy matter.

▮▮▮ Milner entered into an attorney/client relationship with the client and accepted $969 for both the divorce and bankruptcy proceeding. Taking into account the nature of professional services to be provided, neglect may justify a finding of abandonment under circumstances where an attorney neglects a client's matter and fails to communicate with the client. In both the divorce and the bankruptcy matter, Milner agreed to take action on behalf of the client. Having created the false expectation that she would do so, Milner completed minimal work in the divorce matter, took no action in the bankruptcy matter, and thereafter failed to communicate with the client. Milner's agreement to perform the services and her failure to do so taken together with her failure to communicate with the client established serious neglect which justifies a finding of abandonment in violation of Colo. RPC 1.3(neglect of a legal matter). Milner's failure to com-

municate with the client despite the client's numerous attempts to contact Milner constituted a violation of Colo. RPC 1.4(a)(failure to communicate). By her continued retention of the client's funds, Milner converted the client's funds, in violation of Colo. RPC 8.4(c)(conduct involving dishonesty, fraud, deceit or misrepresentation). *See People v. Varallo*, 913 P.2d 1, 12 (Colo.1996).

Milner's failure to perform any services with regard to the bankruptcy and failure to take action on behalf of the client in the divorce proceeding beyond the filing of the petition while retaining the $969 in client funds constituted the charging of an unreasonable fee in violation of Colo. RPC 1.5(a)(charging an unreasonable fee). The Complaint alleges a violation of Colo. RPC 1.15(b)(upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and, upon request by the client render a full accounting). By failing to perform the work requested by the client while retaining a portion of the client's funds which had not been earned, after effectively abandoning the client, Milner violated Colo. RPC 1.15(b). Milner's abandonment of the client effectively terminated the attorney/client relationship, triggering the provisions of Colo. RPC 1.16(d), requiring Milner to refund any advance payment of fees that had not been earned. Milner failed, upon termination, to take steps to the extent reasonably practicable to protect the client's interests, including failing to refund the advance payment of fee that had not been earned, in violation of Colo. RPC 1.16(d).

The Complaint alleges that Milner violated Colo. RPC 5.5(b)(assisting a person who is not a member of the Colorado Bar in the performance of an activity that constitutes the unauthorized practice of law) by assisting Kemp in the unauthorized practice of law. There is no evidence that established Kemp engaged in the unauthorized practice of law with regard to the Biggers matter. Accordingly, the alleged violation of Colo. RPC 5.5(b) is dismissed.

### Claim III: The Stephens Matter

Milner represented Gale Marie Stephens in a bankruptcy proceeding. United States Bankruptcy Judge Sidney B. Brooks dismissed the matter due to Milner's failure to cure deficiencies in the original filing despite an order to do so. Milner took no further action in the case following the court's dismissal. The client, through new counsel, filed a motion to reconsider the dismissal of Stephens' bankruptcy petition, which the court granted. Thereafter, on two separate occasions, the Court ordered Milner to attend a hearing on Milner's mismanagement of the case, the reasonableness of her fees and whether sanctions should be entered against her. On both occasions, Milner failed to appear. Milner's failing to cure the deficiencies in the original bankruptcy filing constituted a failure to provide competent representation to the client in violation of Colo. RPC 1.1(a lawyer shall provide competent representation to a client). The failure to timely cure the filing deficiencies also constitutes neglect under Colo. RPC 1.3. Taking into account the nature of the professional services to be provided and the time frame within which those services were required, the level of neglect may justify a finding of abandonment under circumstances where an attorney neglects a client's matter and fails to communicate with the client. Under the circumstances in this case, the facts establish that Milner deserted, rejected and/or relinquished her professional responsibilities owed to the client. *See People v. Carvell*, No. 99PDJ096 (Colo. PDJ September 11, 2000), 29 Colo. Law 136, 138 (November 2000), 2000 Colo. Discipl. LEXIS 26 (holding that to find abandonment rather than merely neglect, there must be proof that the attorney—during a given time period—was required to accomplish specific professional tasks for the client, failed to accomplish those tasks, and failed to communicate with the client). The level of neglect in the Stephens matter rises to the level of abandonment in violation of Colo. RPC 1.3.

Milner knowingly disobeyed an obligation under the rules of a tribunal on two separate occasions, constituting two separate violations of Colo. RPC 3.4(c)(knowing-

ly disobeying an obligation under the rules of a tribunal). Milner's conduct violated Colo. RPC 8.4(d)(conduct prejudicial to the administration of justice) by causing the bankruptcy court to dismiss and then reconsider the dismissal of the case, set and reset several hearings. Milner's conduct resulted in harm to the client and to the bankruptcy court: the client's wages were garnished resulting in an arrearage in her house payments, and the bankruptcy court expended unnecessary court time attempting to resolve the difficulties arising from Milner's misconduct.

### Claim IV: The Venner Matter

Milner represented Cobe and Sharon Venner who were debtors in a bankruptcy matter. The United States Trustee filed a motion questioning the reasonableness of the fees paid to Milner and questioning whether Milner was sharing fees with non-lawyers. The court ordered Milner to file an accounting for all fees and expenses charged in the case. Milner did not respond to the court's order. On three separate occasions, the court issued an order requiring Milner to appear at hearings, and to show cause why sanctions should not be imposed and/or any monies she received be disgorged for her failure to properly provide representation to her clients. Milner did not appear.

Milner knowingly disobeyed an obligation under the rules of a tribunal by failing to provide an accounting when ordered to do so, and by failing to appear at court-ordered hearings in violation of Colo. RPC 3.4(c)(knowingly disobeying the rules of a tribunal). By causing the court to schedule additional hearings on its docket, Milner engaged in conduct prejudicial to the administration of justice in violation of Colo. RPC 8.4(d)(engaging in conduct prejudicial to the administration of justice).[5]

### Claim V: The Schmidt Matter

In July 1998, David Schmidt went to Milner's office and spoke with Kemp regarding Schmidt's divorce. Schmidt wanted custody of his two minor children. Kemp, Milner's

paralegal, agreed that Milner would accept the case and took $420 from Schmidt. The client paid a total of $595 for Milner's representation. Kemp told Schmidt that Milner would be contacting him. Thereafter, Kemp called Schmidt and told him that Milner would meet with him on the morning of his court appearance date. When Schmidt met with her, Milner was completely unfamiliar with Schmidt's case. Schmidt explained to Milner that his wife was involved in drugs and mentally unstable, and that he wanted custody of the children. At the hearing scheduled that day, Milner arrived late. Moreover, Milner did not inform the court of Schmidt's intent to seek custody. The court ordered a subsequent hearing so that the wife could obtain counsel.

At the next hearing in August 1998, Milner again failed to inform the court of Schmidt's intent to seek custody of his children; on the contrary, she advised the court that the current visitation schedule was working for her client. Milner did not raise any concerns about the welfare of the children. A few days later, Schmidt learned that his estranged wife's boyfriend had beaten her and threatened Schmidt's children with bodily harm. The client called Milner and left a message and Kemp returned his call, stating that they could seek permanent orders in eight to twelve months, that they could not seek temporary custody, and insisting that Schmidt not contact social services. At no time during the representation of Schmidt did Milner or Kemp inform Schmidt of the availability of court-ordered parenting programs. Schmidt was unable to learn from Milner where he could attend parenting class because Milner did not return his calls nor respond to his letters.

Schmidt wrote to Milner and terminated the representation, asking for the return of his file. Milner did not respond. Months later, on December 28, 1998, Schmidt left a message on Milner's voice mail stating that unless he heard back from her and she returned his file, he and his friends would picket outside her office. The next day he

5. Default was denied on the alleged violation of Colo. RPC 1.1 and Colo. RPC 1.3 in claim four in Case No. 99PDJ093, and the People moved to

dismiss the charges, which were dismissed by the court on June 6, 2000.

received a certified letter from Milner's office stating that she would no longer represent him based upon his threats to Milner and to his wife. The letter stated that the police had been notified. Schmidt had never made any threats concerning his wife. The next day, the client received another certified letter from Milner's office containing a court order dismissing his divorce. The client learned from the court that Milner had not taken proper action in his case.

Schmidt's estranged wife saw the letter from Milner's office claiming that he had threatened both his wife and Milner. She notified social services of the alleged threats and the department took action. Schmidt was served with a temporary restraining order preventing him from contacting his children or his ex-wife unless supervised. The statements in the letter regarding threats to his wife were not true.

Despite the client's prior requests, Milner did not return the file to him. The client hired successor counsel. Kemp told successor counsel that he had received information directly from Schmidt's ex-wife about the threats to her and to his children, and claimed that Kemp himself had heard Schmidt make threats regarding Schmidt's children and the ex-wife. None of Kemp's statements were true.

 Milner's failure to be apprised of Schmidt's case prior to the hearing, her failure to arrive on time at the hearing, her failure to advocate her client's interests regarding child custody at the hearings, her failure to advise the client that he could seek temporary custody of his children, combined with her failure to advise the client regarding court-ordered parenting classes constituted a failure to provide competent representation to the client in violation of Colo. RPC 1.1(failure to provide competent representation) and neglect in violation of Colo. RPC 1.3(neglect of a legal matter). Milner's failure to adequately communicate with the client despite his repeated efforts to discuss his case with her constituted a violation of Colo. RPC 1.4(a)(failure to communicate). Schmidt terminated Milner's representation, triggering the obligations of Colo. RPC 1.16(d), which required Milner to surrender papers and property to which the client was entitled. Milner failed to return Schmidt's file to him when requested and therefore violated Colo. RPC 1.16(d).

 The Complaint alleges a violation of Colo. RPC 5.5(b) (a lawyer shall not assist a person who is not a member of the Colorado bar in the performance of activity that constitute the unauthorized practice of law). Kemp met with the client for an initial interview without Milner's oversight and accepted legal representation of Schmidt. Kemp, also without supervision by Milner, advised Schmidt against seeking temporary custody of the client's children, and advised Schmidt against discussing the children's welfare with social services, all of which constitutes the unauthorized practice of law in violation of Colo. RPC 5.5(b).

 The Complaint alleges a violation of Colo. RPC 5.3(b), which provides "a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." Milner failed to adequately supervise Kemp in Kemp's initial meeting with Schmidt and in subsequent conversations with him; she failed to supervise Kemp when he falsely informed successor counsel that Schmidt had made threats regarding the client's wife and children. By failing to restrict Kemp's ability to act inappropriately with regard to Schmidt, Milner violated Colo. RPC 5.3(b).

## II. ANALYSIS OF DISCIPLINE

These two disciplinary proceedings consist of fourteen separate matters. In two matters, Milner violated Colo. RPC 1.1 by failing to provide competent legal advice to the client. In four matters, Milner violated Colo. RPC 1.15(b) by failing to deliver to the client or third person any funds or other property that the client or third person was entitled to receive, and upon request, provide a full accounting regarding such property. In three matters, Milner violated Colo. RPC 1.16(d) by taking reasonable steps to protect the client's interests upon termination. In ten separate matters, Milner violated Colo. RPC

1.3 by failing to act with reasonable diligence and promptness in representing the client, and by neglecting legal matters entrusted to her. In eleven separate matters, Milner violated Colo. RPC 1.4(a) by failing to keep her clients reasonably informed about the status of their matters and failed to promptly comply with reasonable requests for information. In two matters, Milner violated Colo. RPC 1.5(a) by charging an unreasonable fee. In one matter, Milner failed to comply with the requirements of Colo. RPC 1.5(b) requiring that she communicate the basis or rate of her fee in writing before or within a reasonable time after commencing the representation of the client. In three matters, Milner knowingly disobeyed an obligation under the rules of a tribunal. In four matters, Milner violated Colo. RPC 5.3(b) by acting as a lawyer having direct supervisory authority over a nonlawyer and failing to make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer. In one matter, Milner violated Colo. RPC 5.5(b) by assisting a person who is not a member of the Colorado bar in the performance of an activity that constitutes the unauthorized practice of law. In four matters, Milner violated Colo. RPC 8.4(c) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation. In three matters, Milner violated Colo. RPC 8.4(d) by engaging in conduct prejudicial to the administration of justice. In one matter, Milner violated Colo. RPC 8.4(h) by engaging in conduct that adversely reflects on the lawyer's fitness to practice law.

In the Biggers matter, Milner converted funds belonging to the client. Milner's retention of Biggers' funds for an extended period of time, coupled with her lack of communication with the client, and her failure to account for or return the unearned funds for a significant period of time constitutes willful and knowing conduct. Knowing conversion of clients' funds warrants disbarment. *See People v. Silvola,* 915 P.2d 1281, 1284 (Colo.1996)(finding that misconduct that occurred over an extended period of time must be deemed to be willful); *People v. Bradley,* 825 P.2d 475, 476–77 (Colo.1992)(lawyer's inaction over a period of two years deemed willful misconduct); *People v. Williams,* 824 P.2d 813, 814 (Colo.1992) (continued and chronic neglect over extended periods of time must be considered willful); *People v. Elliott,* 99PDJ059, slip op. at 8 (consolidated with 99PDJ086) (Colo. PDJ March 1, 2000), 29 Colo. Law. 112, 114, 115 (May 2000)(disbarring attorney for his accepting advance fees from two clients, performing some but not all of the services for which he was paid, retaining the fees for one year in one matter and two years in another matter, and abandoning the clients). Milner abandoned her clients in both the Biggers and Stephens matters. Abandonment of clients, absent significant mitigating circumstances, warrants disbarment. *See* ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") 4.41(a)(providing that disbarment is generally appropriate when a lawyer abandons the practice and causes serious or potentially serious injury to a client). Disbarment is also the appropriate sanction for the extent of neglect and other rule violations demonstrated in these fourteen separate client matters. *See* ABA *Standards* 4.41(c)(stating that disbarment is generally appropriate when a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client); *People v. Murray,* 887 P.2d 1016, 1021 (Colo.1994) (lawyer disbarred for knowingly failing to perform services for clients in ten separate matters constituting a pattern of neglect and causing potentially serious harm to clients); *People v. Dulaney,* 785 P.2d 1302, 1306 (Colo.1990) (lawyer disbarred for chronic neglect of client matters and use of deceit to cover the neglect).

The charges concerning Milner's failure to supervise Kemp, her paralegal, and her assisting him in the unauthorized practice of law are of particular concern and warrant a serious sanction. *See People v. Felker,* 770 P.2d 402, 406–407 (Colo.1989)(disbarring attorney for misrepresenting to a client that the legal assistant was a lawyer and permitting a nonlawyer to render legal advice to the client). Two prior Colorado disciplinary cases resulted in sanctions arising in part from an attorneys' failure to supervise the same paralegal, Matthew Kemp, and aiding

him in the unauthorized practice of law. In *People v. Reynolds,* 933 P.2d 1295, 1305 (Colo.1997), the respondent attorney was suspended for three years and thirty days for eleven separate violations alleged in two complaints, with conditions upon reinstatement. As in this case, the respondent was found to have repeatedly neglected numerous client matters, engaged in dishonesty, misused client funds, and assisted a nonlawyer in the unauthorized practice of law. In *People v. Stewart,* 892 P.2d 875, 879 (Colo.1995), an attorney was suspended for three years with conditions placed upon reinstatement for making unauthorized charges to her law firm's credit card, aiding a nonlawyer in the unauthorized practice of law, and neglecting client matters after clients paid retainer fees to the nonlawyer assistant. The Supreme Court decided on the sanction of suspension rather than disbarment due to certain mitigating factors, including the fact that during the relevant time period, the respondent was suffering from depression and other physical and emotional problems.

The PDJ and Hearing Board find that Milner's misconduct, while similar to the misconduct in *Reynolds* and *Stewart,* is considerably worsened by her conduct before the United States Bankruptcy Court in the Venner and Stephens matter. Milner's failure to comply with the bankruptcy judge's orders that she appear, finally resulting in the issuance of a bench warrant for her arrest, demonstrates a flagrant disregard for the court system. Milner's conduct resulted in considerable waste of judicial resources and resulted in the Court making written findings in both matters that Milner's conduct on behalf of her clients was unprofessional, incomplete and irresponsible, that she failed to disgorge fees despite being ordered to do so, and that she failed to pay sanctions ordered by the court. *See* the Commentary to ABA *Standards* 7.1(providing that "[d]isbarment should be imposed in cases when the lawyer knowingly engages in conduct that violates a duty owed to the profession with the intent to benefit the lawyer or another, and which causes serious injury or potentially serious injury to a client, the public or the legal system").

Milner's actions resulted in harm to her clients. Aldridge has been unable to modify visitation rights with her children. In the Chavez divorce, the rapport between the parties worsened as a result of Kemp's incorrectly blaming Milner's delay in the case on the unwillingness of the client's husband to cooperate. Chavez eventually represented herself in her divorce and was unable to obtain child support. In the Schmidt matter, Milner's and Kemp's actions resulted in Schmidt's divorce being dismissed for failure to prosecute, Schmidt's wife obtaining a temporary restraining order against him and his visitation rights being restricted. Nelson, who sought assistance investigating the death of her brother, was a particularly vulnerable client at the time she engaged Milner. The beneficiaries of the estate Milner was appointed to administer were required to obtain an attorney to appoint a successor personal representative and suffered considerable stress as a result of Milner's mishandling of the estate. In addition to the private harm, the public has been harmed by Milner's misconduct and her failure to supervise Kemp and provide assistance to him in the unauthorized practice of law. Such misconduct causes a heightened sense of public distrust in lawyers and their legal assistants.

The PDJ and Hearing Board considered matters in mitigation and aggravation pursuant to ABA *Standards* 9.32 and 9.22 respectively. In mitigation, Milner has had no prior discipline, *see id.* at 9.32(a); however, the absence of prior discipline, standing alone, is insufficient to justify a sanction less than disbarment. *See People v. Steinman,* 930 P.2d 596, 600 (Colo.1997). Milner was inexperienced at the time of the conduct in question, having been admitted to the bar of Colorado in 1992, *see id.* at 9.32(f), and she has demonstrated remorse for her actions, *see id.* at 9.32(*l*).

Milner testified in mitigation that the facts giving rise to these proceedings were caused, at least in part, by Kemp. She stated that she was unaware of Kemp's unprofessional conduct with clients, and unaware of the number of cases Kemp had accepted on her behalf. However, Milner, as Kemp's employer and as the supervising law-

yer, was accountable for his interactions with clients. Milner's lack of awareness regarding Kemp's activities cannot be considered a mitigating factor. It is incumbent upon the supervising lawyer to ensure that his or her paralegal adheres to the professional obligations of the lawyer. Ignorance of the paralegal's activities is no excuse. In aggravation, Milner acted with a selfish motive, *see id.* at 9.22(b); she demonstrated a patter of misconduct, *see id.* at 9.22(c); she committed multiple offenses, *see id.* at 9.22(d), she failed to cooperate in the disciplinary proceedings, *see id.* at 9.22(e), several of her clients were vulnerable, *see id.* at 9.22(h), and she exhibited indifference to making restitution, *see id.* at 9.22(j).

The People recommend a three year suspension to disbarment in Case No. 99PDJ030, and disbarment in Case No. 99PDJ093. The PDJ and Hearing Board find that disbarment is the appropriate sanction considering Milner's chronic neglect in multiple client matters, knowing conversion of client funds, abandonment of two clients, multiple instances of failing to adequately supervise a nonlawyer, aiding another in the unauthorized practice of law, and complete disregard of court orders. The PDJ and Hearing Board further find that Milner must pay restitution to the parties set forth herein within one year of the date of this Order.

### III. ORDER

It is therefore Ordered:

1. That KAREN S. MILNER, attorney registration number 21384 is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and her name shall be stricken from the roll of attorneys licensed to practice law in this state;

2. Milner shall pay or make arrangements to pay the following amounts in restitution to the following clients within 12 (twelve) months of the date of this Order:

 A. Jannette Nelson $2,000;

 B. Cindy Biggers $484.50;

 C. David Schmidt $595; and

 D. Mr. and Mrs. Boroos $1,071.

3. As a condition of readmission, Milner must demonstrate that she has fully complied with Judge Brooks' Orders in the Stephens and Venner matters, paying $2,000 to Gale Marie Stephens, and paying $2,000 to Cobe and Sharon Venner.

4. Milner is ORDERED to pay the costs of these proceedings; the People shall submit a Statement of Costs within fifteen (15) days of the date of this Order. Respondent shall have ten (10) days thereafter to submit a response thereto.