*1234
 
 OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this case, we engage in an automatic de novo review of a Southern Nevada Disciplinary Board hearing panel’s recommendation that attorney Glen Lerner receive a public reprimand for violating Nevada Rule of Professional Conduct (RPC) 5.5, which prohibits a lawyer from assisting in the unauthorized practice of law. The violation was based on certain activities by Lerner’s employee, who was a licensed attorney in Arizona but not in Nevada. In deciding whether clear and convincing evidence supports this violation, we are primarily concerned with the issue of whether the employee engaged in the “practice of law.”
 

 Our prior precedent and authority from other jurisdictions support the conclusion that what constitutes the practice of law must be determined on a case-by-case basis, bearing in mind the overarching principle that the practice of law is involved when the activity requires the exercise of judgment in applying general legal knowledge to a client’s specific problem. When the person engaged in the activity is a lawyer licensed in another state, we must also consider whether that activity may be permissible under Nevada’s limited exceptions for multijurisdictional practice, when the activity is limited and incidental to the lawyer’s representation of clients in his home state.
 

 Here, consideration of the key principle — exercise of legal judgment on a client’s behalf, together with ample authority from other jurisdictions faced with similar facts, demonstrates that Lerner’s employee without doubt engaged in the practice of law. Also, the employee worked in Lerner’s Las Vegas office for Nevada clients, so he was not engaged in limited, incidental, multijurisdictional practice related to his representation of clients in Arizona, where he is licensed. Consequently, the employee’s practice of law was unauthorized. The employee’s activities were fur
 
 *1235
 
 ther performed as part of his regular duties, in conformity with the policies and practices of Lerner’s firm, and thus, Lerner assisted in the unauthorized practice of law. We therefore conclude that clear and convincing evidence supports the violation of RPC 5.5. We further agree with the hearing panel’s recommendation of a public reprimand as the appropriate discipline.
 

 FACTS AND PROCEDURAL HISTORY
 

 Attorney Glen Lerner focuses his practice on personal injury cases. From 1998 until 2005, Kevin Rowe was employed as a paralegal/law clerk in Lerner’s Las Vegas office. In March 2005, Rowe was admitted to practice law in the state of Arizona. He is not and never has been admitted to practice law in Nevada. Testimony at the hearing indicates that Rowe is now a partner in Lerner’s Bullhead City, Arizona, office and that he splits his time between the Las Vegas and Bullhead City offices.
 

 In April 2005, Lerner’s Las Vegas firm was retained to represent injured plaintiffs in two separate cases. The defendants in both cases were insured by Progressive Insurance Company. Rowe appears to have been assigned primary responsibility for these plaintiffs’ cases, despite his lack of a Nevada license while regularly working in the Las Vegas office. He conducted negotiations with Progressive, including preparation and transmission of policy limits demand letters between April and June 2005, after he was licensed in Arizona. He signed the letters as “Kevin Rowe, Esq.” In June 2005, Progressive contacted the State Bar of Nevada to determine whether Rowe was a licensed Nevada lawyer, and upon learning that he was not, it filed a grievance against Lerner.
 

 A hearing was conducted before a Southern Nevada Disciplinary Board hearing panel. At the hearing, Lerner indicated that it was common practice for Rowe and other law clerks and paralegals to handle prelitigation negotiations with an insurance company’s non-lawyer claims adjustor. Rowe testified that he did not believe that he had engaged in any improper activity because the claim was in the prelitigation stage, and he essentially acted as the counterpart to the insurance claims adjustor — also a nonlawyer. Lerner similarly distinguished between litigation, which must be handled by a lawyer, and negotiation of a claim, which he contended was not the practice of law and could be handled by nonlawyer staff. Finally, Lerner asserted that RPC 5.5 is unconstitutionally vague and ambiguous because it was not clear what actions were permissible for Rowe. Lerner has received several private reprimands, including three for identical conduct. One of these reprimands concerned Rowe himself and one was issued pursuant to a stipulation between Lerner and the State Bar. Lerner also maintained that Rowe was a lawyer, and so RPC 5.3, pertaining to supervision of nonlawyer staff, did not apply.
 

 
 *1236
 
 The State Bar argued that valuing a client’s claim was the practice of law, that Rowe was not an insurance claims adjustor, a role which is subject to regulation by the insurance commissioner, and therefore, his actions constituted the unauthorized practice of law. The State Bar further asserted that a lawyer who is not licensed in Nevada is a nonlawyer for purposes of Nevada’s professional conduct rules and thus requires supervision by a Nevada-licensed lawyer. Finally, the State Bar maintained that RPC 5.5 was not impermissibly vague and was properly enforced in this instance.
 

 The hearing panel determined that since Rowe was licensed in Arizona, he did not meet the definition of “nonlawyer.” Thus, the duty of supervision set forth in RPC 5.3 did not apply to him.
 
 [1]
 
 But the panel rejected Lerner’s constitutional challenges to RPC 5.5 and concluded that his conduct impermissibly assisted Rowe’s unauthorized practice of law. The panel recommended a public reprimand and payment of costs.
 
 [2]
 
 This appeal followed.
 

 After initial consideration of the parties’ arguments, this court invited participation by a broad cross-section of bar organizations on the issue of how best to define the practice of law. Two entities responded to the invitation and filed amicus briefs, the Estate Planning Council of Northern Nevada and the State Bar of Nevada’s Real Property Section.
 

 DISCUSSION
 

 Our de novo review of this lawyer disciplinary matter
 
 [3]
 
 begins with the language of RPC 5.5(a)(2), which provides that “[a] lawyer shall not . . . [ajssist another person in the unauthorized practice of law.” As an initial matter, then, we must determine whether Rowe engaged in the unauthorized practice of law. We conclude that what constitutes the practice of law must be determined on a case-by-case basis, and under ample authority from other jurisdictions, Rowe’s conduct was the practice of law. Rowe is not a licensed attorney in Nevada, and his conduct was therefore unauthorized. And since Rowe’s actions were in conformity with the policies of Lerner’s firm, Lerner assisted in his unauthorized practice of law. Accordingly, clear and convincing evidence supports the violation found by the hearing panel. We also consider and reject Lerner’s vagueness challenge to the enforceability of RPC 5.5. Finally, we agree with the panel’s recommendation of a public reprimand as the appropriate discipline in this case.
 

 
 *1237
 

 Rowe’s conduct constitutes the practice of law
 

 This court has held that it has the inherent power to define the practice of law.
 
 [4]
 
 On only one occasion, however, has the issue been explored in Nevada.
 
 [5]
 
 In the 1958 decision,
 
 Pioneer Title
 
 v.
 
 State Bar,
 

 [6]
 

 the State Bar had obtained an injunction against Pioneer Title Company from preparing any documents for parties to a typical real estate sales transaction, and Pioneer appealed. This court engaged in a thoughtful discussion of the purposes served by prohibiting the unauthorized practice of law and the factors that impacted whether certain tasks should be viewed as the practice of law.
 

 First, the
 
 Pioneer Title
 
 opinion identified the purpose of the prohibition on the unauthorized practice of law as protecting the public, stating
 

 [t]he public interest therefore requires that in the securing of professional advice and assistance upon matters affecting one’s legal rights one must have assurance of competence and integrity and must enjoy freedom of full disclosure with complete confidence in the undivided allegiance of one’s counsellor in the definition and assertion of the rights in question.
 
 [7]
 

 For this reason, high standards of training and ethics are imposed on lawyers. Other courts have similarly emphasized the overarching reason for requiring that only lawyers engage in the practice of law: to ensure that the public is served by those who have demonstrated training and competence and who are subject to regulation and discipline.
 
 [8]
 

 
 *1238
 
 But, the
 
 Pioneer Title
 
 court noted, the public is not well-served by defining the practice of law in such a manner as to require a person faced with a routine transaction to incur the expense of a lawyer unnecessarily.
 
 [9]
 
 And those transactions that may be considered “routine” evolve over time: as new areas involving legal rights develop, expert legal advice becomes more important, and as certain transactions become standardized, specific legal advice becomes less necessary.
 
 [10]
 
 But this court also emphasized that a person’s decision not to obtain legal counsel must be one based on the person’s self-reliance, not reliance on a nonlawyer third party:
 

 The need for legal counselling in any transaction is a question which must be decided by the person whose legal rights are involved. If, in his judgment, he does not need advice as to his legal rights or assistance with respect to them, no one can complain of his self-reliance. Such a case must be a true case of ¿'<2//-reliance, however. If reliance be placed upon the judgment of
 
 others
 
 as to his legal rights, the case is different. If advice or judgment is professionally given by one not a party to the transaction and not an attorney, a problem in unauthorized practice is presented.
 
 [11]
 

 Under
 
 Pioneer Title,
 
 then, the practice of law is implicated whenever a person is faced with a legal issue that cannot be handled by resort to routine forms or customs, and when the person makes the decision not to rely on his or her own judgment but to obtain assistance from someone else, a stranger to the situation. In the interest of public protection,
 
 Pioneer Title
 
 holds, this “someone else” must be qualified to render such assistance.
 

 Pioneer Title
 
 is consistent with cases from other jurisdictions. A key distinction drawn by many courts in determining whether a given activity is the practice of law is whether the services include the application of the general body of legal knowledge to a client’s specific problem. As stated by the Colorado Supreme Court, a “touchstone” of whether an activity constitutes the unauthorized practice of law is whether an unlicensed person offers “advice or judgment about legal matters to another person for use in a specific legal setting.”
 
 [12]
 
 Similarly, a bankruptcy court applying Tennessee
 
 *1239
 
 law stated that the practice of law “‘relates to the rendition of services for others that call for the professional judgment of a lawyer,’” that is, the lawyer’s “‘educated ability to relate the general body and philosophy of law to a specific legal problem of a client.’”
 
 [13]
 
 The Ninth Circuit, applying Oregon law, likewise held that “ ‘the “practice of law” means the exercise of professional judgment in applying legal principles to address another person’s individualized needs through analysis, advice, or other assistance.’”
 
 [14]
 
 For example, simply providing forms or offering a service to type client-provided information onto the forms was not the practice of law, but advising the client about how to complete a form, e.g., what information to include and on what portions of the form, was the practice of law.
 
 [15]
 

 Application of these general principles, however, is highly fact-specific, and the practice of law definition is not susceptible to a bright-line, broadly stated rule. Courts throughout the country agree that what constitutes the practice of law must be decided on the facts and in the context of each individual case.
 
 [16]
 
 The Pennsylvania Supreme Court has stated that
 

 [mjarking out the abstract boundaries of legal practice would be an elusive, complex task more likely to invite criticism than to achieve clarity. . . . While at times the line between
 
 *1240
 
 lay and legal judgments may be a fine one, it is nevertheless discernible. Each given case must turn on a careful analysis of the particular judgment involved and the expertise that must be brought to bear on its exercise.
 
 [17]
 

 In determining what constitutes the practice of law, the public interest should be of primary concern — both protection of the public from incompetent legal services and also ensuring that regulation of the practice of law is not so strict that the public good suffers.
 
 [18]
 
 As the New Jersey Supreme Court has held, ‘ ‘ ‘ [I]n cases involving an overlap of professional discipline we must try to avoid arbitrary classifications and instead focus on the public’s realistic need for protection and regulation.’ ”
 
 [19]
 

 Here, the amici’s briefs illustrate why a case-by-case approach is necessary, since the particular tasks to be performed and decisions to be made depend upon the type of transaction or area of law involved. For example, in its amicus brief, the Estate Planning Council acknowledges the importance of requiring competence in those who provide legal services, but it maintains that a multidisciplinary approach best serves clients in the estate planning area. According to the Council, then, the unauthorized practice of law should not be so strictly defined that an accountant or financial planner would be prohibited from discussing the tax consequences of certain investments with clients, especially when these professionals are subject to licensing and continuing education requirements similar to and in some cases more intensive than lawyers. The Real Property Section, in its amicus brief, cites to the American Bar Association’s Task Force on the Model Definition of the Practice of Law’s report, which recommended a definition that “include[s] the basic premise that the practice of law is the application of legal principles and judgment to the circumstances or objectives of another person or entity,”
 
 [20]
 
 but suggests that it may be impracticable for this court to prescribe a bright-line
 
 *1241
 
 definition. Similar to the Estate Planning Council’s concerns over prohibiting a multidisciplinary approach, the Real Property Section urges us to be aware of possible consequences of our decision to title and escrow companies, commercial lenders, accountants, and out-of-state lawyers who might advise clients on Nevada real estate transactions.
 

 Turning then to cases involving conduct similar to that engaged in by Rowe, it becomes clear that Rowe’s activities were the practice of law. The record reflects that Rowe routinely conducted initial client consultations and decided whether the representation should be accepted, negotiated clients’ claims (which included making legal arguments in support of the clients’ position), and served as the clients’ sole contact in the firm. All of these activities have been held by other courts to constitute the practice of law.
 

 For example, the decision whether to represent a particular client calls for an exercise of professional judgment.
 
 [21]
 
 Also, evaluating a personal injury claim, advising clients of the claim’s merits, and negotiating the claim with insurance companies constitutes the practice of law.
 
 [22]
 
 Notably, the Florida Supreme Court held that a paralegal engaged in the unauthorized practice of law by engaging in settlement negotiations, including discussion of case authority and legal strategy with clients, speaking on clients’ behalf, and arguing the legal merits of the clients’ cases.
 
 [23]
 
 Moreover, both the Kansas Supreme Court and the New Jersey Supreme Court have stated that attorneys must maintain direct relationships with their clients.
 
 [24]
 
 Specific examples of activities found to constitute the practice of law include advising a client about his or her legal
 
 *1242
 
 rights and recommending future actions, negotiating settlement of a client’s claims, and preparing and signing demand letters.
 
 [25]
 

 Moreover, Lerner was aware that such conduct constituted the practice of law because he had previously received three private reprimands for similar activities, including one for identical actions by Rowe. While we agree with Lerner that he is not estopped from arguing the issue in this case by his conditional guilty plea to the conduct underlying one of his prior reprimands, certainly this prior discipline demonstrates his awareness that such conduct constituted the practice of law.
 
 [26]
 

 Clearly, Rowe engaged in the practice of law. Since he was not licensed in Nevada, his conduct would be authorized only if allowed by RPC 5.5(b), which permits lawyers licensed in other states to perform legal services in Nevada under certain conditions, primarily that any Nevada services be incidental to the lawyer’s representation of the client in the lawyer’s state of licensure and not as a regular or repetitive course of business.
 
 [27]
 
 Here, Rowe regularly worked in Lerner’s Las Vegas office and acted on behalf of Nevada
 
 *1243
 
 clients. He did not perform isolated services in Nevada on behalf of an Arizona client related to his representation of that client in Arizona. Accordingly, Rowe’s practice of law in Nevada was unauthorized.
 

 Clear and convincing evidence supports the panel’s finding that Lerner violated RPC 5.5
 

 Rowe’s unauthorized practice of law, however, does not automatically equate to Lerner’s ethical violation. The mere fact that an employee acted improperly does not necessarily result in lawyer discipline; the lawyer is not per se vicariously responsible for an employee’s misconduct.
 
 [28]
 
 Rather, to support a rule violation, clear and convincing evidence must support a finding that Lerner assisted Rowe’s unauthorized practice of law.
 
 [29]
 

 Lerner argues that Rowe’s conduct was not the practice of law, but he does not dispute that Rowe’s actions were in accordance with the firm’s policies and common practices. As discussed above, Rowe’s conduct was indeed the practice of law, and Rowe engaged in the conduct as part of his routine duties at Lerner’s firm. Accordingly, clear and convincing evidence supports the panel’s finding that Lerner violated RPC 5.5.
 
 [30]
 

 RPC 5.5 is enforceable as it is not unconstitutionally vague
 

 Lerner nevertheless argues that he cannot be subject to discipline under RPC 5.5. According to Lerner, the rule is unconstitutionally vague on its face because it does not define what constitutes the practice of law. He likewise asserts that the “safe harbor” provision included in the multijurisdictional rule amendments is impermissibly vague.
 

 
 *1244
 
 In
 
 In re Discipline of Schaefer,
 
 this court addressed the issue of whether former SCR 182 (prohibiting direct contact with a represented party, currently RPC 4.2) was unconstitutionally vague and began its analysis with the following statement:
 

 As stated by the United States Supreme Court in 1926, a statute or rule is impermissibly vague if it “either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.” This remains the test today. It is well-settled that, in evaluating whether a statute is vague, judicial opinions construing the statute should be considered. “[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the . . . conduct was [prohibited].”
 
 [31]
 

 With respect to lawyer discipline rules, the Colorado Supreme Court has reasoned that a “licensed lawyer” standard applies,
 
 [32]
 
 requiring that the lawyer’s training and knowledge of legal principles be considered in determining whether the disciplinary rule is impermissibly vague.
 
 [33]
 
 In particular, the Colorado court stated, “we are convinced that these disciplinary proscriptions are adequate to inform the respondent and other licensed lawyers of the nature of the prohibited conduct and that they provide sufficiently clear norms of conduct for the objective administration of the disciplinary process.’ ’
 
 [34]
 

 This court has also noted that “a facial vagueness challenge is appropriate, even where no substantial First Amendment concerns are implicated, if the penal statute is so imprecise, and vagueness so permeates its text, that persons of ordinary intelligence cannot understand what conduct is prohibited, and the enactment authorizes or encourages arbitrary and discriminatory enforcement.”
 
 [35]
 

 
 *1245
 
 In
 
 Matter of T.R.
 
 ,
 
 [36]
 
 in which a juvenile challenged the statutory registration scheme for juvenile sex offenders, this court discussed the vagueness doctrine and emphasized the heavy burden placed upon the proponent of a facial attack:
 

 Substantive due process demands definitive laws and includes the void-for-vagueness doctrine. The vagueness doctrine is based upon the principle that “a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.” Thus, when a statute is so unclear that vagueness pervades the law’s content, it is subject to a facial attack.
 
 To succeed on a facial challenge for vagueness, “the complainant must demonstrate that the law is impermissibly vague in all of its applications.” A complainant “who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.”
 

 [37]
 

 Here, while the RPC do not define “practice of law,” an abundance of case authority explaining the term is available and was discussed earlier in this opinion. Thus, even if the term “practice of law,” standing alone, might be vague, its meaning is readily perceptible in light of authority construing the term. Moreover, courts in several jurisdictions have uniformly rejected vagueness challenges to proscriptions against the unauthorized practice of law.
 
 [38]
 

 Also, Lerner’s facial attack on RPC 5.5(b) must fail under this court’s holding in
 
 T.R.
 
 RPC 5.5(b) sets forth limited exceptions to the unauthorized practice of law provision when the person engaging in the practice of law is licensed as an attorney in another jurisdiction. These exceptions generally require that the out-of-state lawyer’s representation of a client in Nevada occur only on an “oc
 
 *1246
 
 casional basis,”
 
 [39]
 
 not a “regular or repetitive course of business.”
 
 [40]
 
 Here, at all times pertinent to this matter, Rowe worked out of Lerner’s Las Vegas office and acted on behalf of Nevada clients as part of a “regular or repetitive course of business.” Thus, Rowe’s conduct was clearly prohibited by the rule. Under T.R., one whose conduct is clearly prohibited by a rule or statute cannot assert a facial vagueness challenge, arguing that the rule or statute might be vague as applied to someone else in different circumstances.
 
 [41]
 
 Consequently, Lerner cannot challenge the rule as facially vague, when Rowe’s conduct was clearly proscribed.
 

 A public reprimand is the appropriate discipline
 

 The panel recommended a public reprimand. Lerner argues that, at most, a private reprimand is sufficient.
 

 The American Bar Association Standards for Imposing Lawyer Sanctions suggest an analysis of four factors to be considered in determining an appropriate disciplinary sanction: the duty violated, the lawyer’s mental state, the potential or actual injury caused by the lawyer’s misconduct, and the existence of aggravating or mitigating factors.
 
 [42]
 
 And specifically with respect to violations involving the unauthorized practice of law, the Standards recommend a public reprimand when a lawyer negligently engages in a violation that causes injury or potential injury to a client or the public, while a private reprimand is generally appropriate if the lawyer engages in an isolated instance of nonwillfal misconduct that causes little or no actual or potential injury.
 
 [43]
 
 Finally, the Standards note that when a lawyer has received a private reprimand for similar misconduct, another private reprimand is not appropriate.
 
 [44]
 

 Here, Lerner violated a duty to the public and to the profession to refrain from assisting in the unauthorized practice of law, and he did so knowingly. But the record does not indicate that any harm was suffered by the firm’s clients, and evidence of potential harm is at most speculative. Other specifically listed aggravating circumstances are applicable here: a pattern of misconduct, a refusal to acknowledge the wrongful nature of the misconduct, and substantial experience in the practice of law.
 
 [45]
 

 
 *1247
 
 Despite the lack of apparent harm, which could possibly indicate that a private reprimand would be sufficient under the Standards discussed above, Lerner did not engage in an isolated instance of misconduct. To the contrary, he has been privately reprimanded three times for similar or identical misconduct and does not dispute that Rowe’s conduct was consistent with his firm’s policies. Since a private reprimand has not had any effect on his conduct and in light of the aggravating factors, we agree with the hearing panel that a public reprimand is the appropriate discipline.
 

 CONCLUSION
 

 What constitutes the “practice of law” must be determined on a case-by-case basis, in light of the “touchstone” principle that the practice of law includes activities calling for the exercise of trained judgment in applying the general body of legal knowledge to the specific problem of a client and recommending a course of action. In this case, based on ample authority from other jurisdictions, Rowe engaged in the practice of law. Moreover, since his conduct was not incidental to his representation of clients in his licensing jurisdiction, his conduct was unauthorized. Lerner assisted in Rowe’s unauthorized practice, which was undertaken in accordance with Lerner’s usual policies and practices. Therefore, Lerner violated RPC 5.5. For this violation, a public reprimand is the appropriate discipline.
 

 Accordingly, Lerner is hereby publicly reprimanded. He shall also pay the disciplinary proceedings’ costs, as set forth in the State Bar’s bill of costs.
 

 Maupin, C. J., Gibbons, Parraguirre, Douglas, Cherry and Saitta, JL, concur.
 

 [1]
 

 The State Bar has not challenged the panel’s determination on appeal, so we do not address this issue.
 

 [2]
 

 The panel was unanimous in finding a rule violation, and 4-1 as to the recommended discipline. The record does not indicate what discipline the dissenting member would have imposed.
 

 [3]
 

 In re Discipline of Schaefer,
 
 117 Nev. 496, 515, 25 P.3d 191, 204,
 
 as modified. by
 
 31 P.3d 365 (2001).
 

 [4]
 

 Marfisi
 
 v.
 
 District Court,
 
 85 Nev. 445, 447, 456 P.2d 443, 444 (1969).
 

 [5]
 

 Pioneer Title v. State Bar,
 
 74 Nev. 186, 326 P.2d 408 (1958). This court declined to consider the issue in
 
 Paso Builders, Inc. v. Hebard,
 
 83 Nev. 165, 172, 426 P.2d 731, 736 (1967), in which the plaintiffs had argued that the defendant title company had engaged in the unauthorized practice of law by preparing a deed of trust, stating, “We need not express our view as to whether Lawyers Title engaged in the practice of law when it prepared the trust deed, nor need we discuss the implications of negligence per se, since the title company’s conduct did not proximately cause damage to Paso.” Other cases in which the issue has arisen concerned whether a particular nonlawyer could engage in what was concededly the practice of law (usually filing documents and appearing in court) under the circumstances of the particular case.
 
 See Guerin
 
 v.
 
 Guerin,
 
 116 Nev. 210, 213-14, 993 P.2d 1256, 1258 (2000);
 
 Salman
 
 v.
 
 Newell,
 
 110 Nev. 1333, 1336, 885 P.2d 607, 608 (1994);
 
 Martinez v. District Court,
 
 102 Nev. 561, 562, 729 P.2d 487, 488 (1986).
 

 [6]
 

 74 Nev. 186, 326 P.2d 408.
 

 [7]
 

 Id.
 
 at 189-90, 326 P.2d at 410.
 

 [8]
 

 In re Campanella,
 
 207 B.R. 435, 444 (Bankr. E.D. Pa. 1997);
 
 The Florida Bar v. Neiman,
 
 816 So. 2d 587, 596 (Fla. 2002);
 
 Com’n on Unauthorized Practice
 
 v.
 
 O’Neil,
 
 147 P.3d 200, 213 (Mont. 2006);
 
 Dauphin County Bar Association v. Mazzacaro,
 
 351 A.2d 229, 232 (Pa. 1976);
 
 Franklin
 
 v.
 
 Chavis,
 
 640 S.E.2d 873, 876 (S.C. 2007).
 

 [9]
 

 Pioneer Title,
 
 74 Nev. at 190, 326 P.2d at 410.
 

 [10]
 

 Id.
 
 For example, the use of standardized forms by proper person litigants has assisted both the litigants and the courts in addressing many legal matters. The Nevada Supreme Court Commission on Law Libraries has assisted in drafting and obtaining approval of a wide variety of such forms, including close to 150 forms for use in divorce, guardianship, and landlord-tenant matters.
 

 [11]
 

 Id.
 
 at 191, 326 P.2d at 410.
 

 [12]
 

 People v. Shell,
 
 148 P.3d 162, 174 (Colo. 2006);
 
 see also Sussman
 
 v.
 
 Grado,
 
 746 N.Y.S.2d 548, 552 (Dist. Ct. 2002) (stating that “ ‘[t]he practice of law involves the rendering of legal advice and opinions directed to particu
 
 *1239
 
 lar clients’ ” (quoting
 
 Matter of Rowe,
 
 604 N.E.2d 728 , 731 (N.Y. 1992)));
 
 Disciplinary Counsel
 
 v.
 
 Palmer,
 
 761 N.E.2d 716, 719 (Ohio Bd. Unauth. Prac. 2001) (noting that the key element of the practice of law is tailoring advice to the needs of a specific client).
 

 [13]
 

 In re Rose,
 
 314 B.R. 663, 703 (Bankr. E.D. Term. 2004) (quoting
 
 Petition of Burson,
 
 909 S.W.2d 768, 775 (Tenn. 1995)).
 

 [14]
 

 Taub v. Weber,
 
 366 F.3d 966, 970 (9th Cir. 2004) (quoting
 
 Oregon State Bar v. Smith,
 
 942 P.2d 793, 800 (Or. Ct. App. 1997));
 
 see also Oregon State Bar v. Taub,
 
 78 P.3d 114, 116 (Or. Ct. App. 2003) (identifying two components to the practice of law: (1) the exercise of professional judgment, which occurs when an informed or trained discretion is exercised in the selection or drafting of a document to meet a client’s legal needs, an intelligent choice is made between alternative methods of accomplishing the client’s desires, or advice that involves the application of legal principles is given; and (2) application of legal principles to individual cases, which occurs when a particular form, document, or option is recommended to the client).
 

 [15]
 

 See, e.g., In re Bernales,
 
 345 B.R. 206, 215 (Bankr. C.D. Cal. 2006) (determining which type of bankruptcy form to use for a particular client);
 
 In re Woodward,
 
 314 B.R. 201, 205 (Bankr. N.D. Iowa 2004) (advising clients of particular exemptions, legal rights, and legal options is the practice of law);
 
 The Florida Bar v. We The People Forms,
 
 883 So. 2d 1280, 1283-84 (Fla. 2004) (counseling clients with respect to estate planning, divorce, bankruptcy, and other forms);
 
 Cincinnati Bar Assn.
 
 v.
 
 Bailey,
 
 852 N.E.2d 1180, 1185-86 (Ohio 2006) (advising and instructing clients on how to complete and file documents with state bureau of motor vehicles to obtain relief from drivers’ license revocation).
 

 [16]
 

 Roberts v. LaConey,
 
 650 S.E.2d 474, 477 (S.C. 2007);
 
 see also In re Flack,
 
 33 P.3d 1281, 1287 (Kan. 2001) (stating that what constitutes the practice of law must be determined on a case-by-case basis).
 

 [17]
 

 Dauphin County Bar Association v. Mazzacaro,
 
 351 A.2d 229, 233 (Pa. 1976) (internal quotation and citation omitted);
 
 see also In re Benninger,
 
 357 B.R. 337, 352 (Bankr. W.D. Pa. 2006);
 
 In re Chimko,
 
 831 N.E.2d 316, 321 (Mass. 2005) (“It is not easy to define the practice of law,” and “[t]o a large extent each case must be decided upon its own particular facts.”) (internal quotations and citations omitted).
 

 [18]
 

 Harkness v. Unemployment Comp. Bd.,
 
 920 A.2d 162, 167 (Pa. 2007);
 
 see also Burson,
 
 909 S.W.2d at
 
 111
 
 (recognizing the court’s duty to protect the public interest from unlearned and unskilled legal advice, but “ ‘not to hamper and burden such interest with impractical technical restraints’ ” (quoting
 
 Cowern
 
 v.
 
 Nelson,
 
 290 N.W. 795, 797 (Minn. 1940))).
 

 [19]
 

 In re Opinion No. 24,
 
 607 A.2d 962, 966 (N.J. 1992) (quoting
 
 Application of New Jersey Soc. of CPAs,
 
 507 A.2d 711, 714 (N.J. 1986)).
 

 [20]
 

 American Bar Association Task Force on the Model Definition of the Practice of Law Recommendation, August 11, 2003. http://www/abanet.org/ cpr/model-def/recomm.pdf (last visited December 22, 2008) (on file with the Nevada Supreme Court Clerk’s office).
 

 [21]
 

 See Louisiana State Bar Ass’n v. Edwins,
 
 540 So. 2d 294, 301 (La. 1989) (delegating exercise of professional judgment to paralegal with respect to entry of contract with client, evaluation of client’s claim, preparation of documents, and written 'arguments, filing of documents, and consultation on advisability of settlement aided nonlawyer in unauthorized practice of law);
 
 Attorney Griev. Comm. v. Hallmon,
 
 681 A.2d 510, 515 (Md. 1996) (stating that “[l]aw clerks and paralegals perform a variety of services for attorneys but they may not give legal advice, accept cases, set fees, appear in court, plan strategy, make legal decisions, or chart the direction of a case”) (internal quotation and citation omitted);
 
 Attorney Griev. Com’n v. James,
 
 666 A.2d 1246, 1248 (Md. 1995) (noting that meeting with prospective clients may constitute the practice of law, inasmuch as “the very acts of interview, analysis and explanation of legal rights constitute practicing law”) (citations and quotations omitted).
 

 [22]
 

 Louisiana Claims Adj. Bureau
 
 v.
 
 State Farm,
 
 877 So. 2d 294, 299 (La. Ct. App. 2004);
 
 see also People v. Stewart,
 
 892 P.2d 875, 876 (Colo. 1995);
 
 Mays
 
 v.
 
 Neal,
 
 938 S.W.2d 830, 835-36 (Ark. 1997);
 
 In re Flack,
 
 33 P.3d 1281, 1287 (Kan. 2001).
 

 [23]
 

 The Florida Bar v. Neiman,
 
 816 So. 2d 587, 596 (Fla. 2002).
 

 [24]
 

 Flack,
 
 33 P.3d at 1287;
 
 Opinion No. 24,
 
 607 A.2d at 969;
 
 see also People
 
 v.
 
 Milner,
 
 35 P.3d 670, 686 (Colo. Office of Presiding Disc. J. 2001) (agreeing to represent a client is the practice of law).
 

 [25]
 

 Stewart,
 
 892 P.2d at 876;
 
 Mays,
 
 938 S.W.2d at 835-36;
 
 Flack,
 
 33 P.3d at 1287.
 

 [26]
 

 In the conditional guilty plea, Lerner stipulated that he had violated former SCR 187 (currently RPC 5.3) by failing to adequately supervise his non-lawyer staff, who were responsible for conducting initial client consultations, executing representation and fee agreements, and communicating with the clients. The clients involved never spoke with an attorney for the entire time their cases were handled by Lerner’s firm.
 

 [27]
 

 Specifically, RPC 5.5(b) provides:
 

 A lawyer who is not admitted in this jurisdiction, but who is admitted and in good standing in another jurisdiction of the United States, does not engage in the unauthorized practice of law in this jurisdiction when:
 

 (1) The lawyer is authorized to appear before a tribunal in this jurisdiction by law or order of the tribunal or is preparing for a proceeding in which the lawyer reasonably expects to be so authorized;
 

 (2) The lawyer participates in this jurisdiction in investigation and discovery incident to litigation that is pending or anticipated to be instituted in a jurisdiction in which the lawyer is admitted to practice;
 

 (3) The lawyer is an employee of a client and is acting on behalf of the client or, in connection with the client’s matters, on behalf of the client’s other employees, or its commonly owned organizational affiliates in matters related to the business of the employer, provided that the lawyer is acting in this jurisdiction on an occasional basis and not as a regular or repetitive course of business in this jurisdiction;
 

 (4) The lawyer is acting with respect to a matter that is incident to work being performed in a jurisdiction in which the lawyer is admitted, provided that the lawyer is acting in this jurisdiction on an occasional basis and not as a regular or repetitive course of business in this jurisdiction;
 

 
 *1243
 
 (5) The lawyer is engaged in the occasional representation of a client in association with a lawyer who is admitted in this jurisdiction and who has actual responsibility for the representation and actively participates in the representation, provided that the out-of-state lawyer’s representation of the client is not part of a regular or repetitive course of practice in this jurisdiction;
 

 (6) The lawyer is representing a client, on an occasional basis and not as part of a regular or repetitive course of practice in this jurisdiction, in areas governed primarily by federal law, international law, or the law of a foreign nation; or
 

 (7) The lawyer is acting as an arbitrator, mediator, or impartial third party in an alternative dispute resolution proceeding.
 

 [28]
 

 See
 
 Matter of Galbasini,
 
 786 P.2d 971, 975 (Ariz. 1990).
 

 [29]
 

 In re
 
 Stuhff, 108 Nev. 629, 634-35, 837 P.2d 853, 856 (1992).
 

 [30]
 

 Id.
 
 at 635, 837 P.2d at 856 (stating that clear and convincing evidence requires “ ‘evidence of tangible focts from which a legitimate inference . . . may be drawn’” (quoting
 
 Gruber v. Baker,
 
 20 Nev. 453, 477, 23 P. 858, 865 (1890))).
 

 [31]
 

 In
 
 re Discipline of Schaefer,
 
 117 Nev. 496, 511-12, 25 P.3d 191, 201-02 (2001) (footnotes omitted) (quoting
 
 Connally v. General Const. Co.,
 
 269 U.S. 385, 391 (1926), and
 
 United States v. Lanier,
 
 520 U.S. 259, 267 (1997), respectively; citing
 
 Bouie
 
 v.
 
 City of Columbia,
 
 378 U.S. 347, 355, 362 (1964);
 
 Winters
 
 v.
 
 New York,
 
 333 U.S. 507, 514-15 (1948) (noting that an individual is “chargeable with knowledge of the scope of subsequent interpretation” of a statute);
 
 Minnesota
 
 v.
 
 Probate Court,
 
 309 U.S. 270, 273-74 (1940);
 
 Lanzetta
 
 v.
 
 New Jersey,
 
 306 U.S. 451, 456 (1939);
 
 Hicklin
 
 v.
 
 Coney,
 
 290 U.S. 169, 172 (1933);
 
 Bandini Co.
 
 v.
 
 Superior Court,
 
 284 U.S. 8, 17-18 (1931); and Fox v.
 
 Washington,
 
 236 U.S. 273, 277 (1915)).
 

 [32]
 

 People v. Meier,
 
 954 P.2d 1068, 1071 (Colo. 1998) (relying on an earlier case rejecting a vagueness challenge to Colorado’s version of the Model Code,
 
 People v. Morley,
 
 725 P.2d 510, 516 (Colo. 1986)).
 

 [33]
 

 Morley,
 
 725 P.2d at 516.
 

 [34]
 

 Id.
 

 [35]
 

 City of Las Vegas v. Dist. Ct.,
 
 118 Nev. 859, 863, 59 P.3d 477, 480 (2002).
 

 [36]
 

 119 Nev. 646, 80 P.3d 1276 (2003).
 

 [37]
 

 Id.
 
 at 652, 80 P.3d at 1280 (footnotes omitted) (quoting
 
 Connally v. General Const. Co.,
 
 269 U.S. 385, 391 (1926), and
 
 Hoffman Estates v. Flipside, Hoffman Estates,
 
 455 U.S. 489, 495, 497 (1982)) (emphasis added).
 

 [38]
 

 See, e.g., Statewide Grievance Committee v. Patton,
 
 683 A.2d 1359, 1361 (Conn. 1996);
 
 State
 
 v.
 
 Wees,
 
 58 P3d 103, 107 (Idaho Ct. App. 2002);
 
 Iowa Supreme Court Com’n v. Sturgeon,
 
 635 N.W.2d 679, 684-85 (Iowa 2001);
 
 Com’n on Unauthorized Practice v. O’Neil,
 
 147 P.3d 200, 215 (Mont. 2006);
 
 State v. Rogers,
 
 705 A.2d 397, 400-02 (N.J. Super. Ct. App. Div. 1998);
 
 Drew v. Unauthorized Prac. of Law Comm.,
 
 970 S.W.2d 152, 155 (Tex. App. 1998);
 
 Bd. of Com’rs, Utah State Bar v. Petersen,
 
 937 P.2d 1263, 1267 (Utah 1997);
 
 State v. Hunt,
 
 880 P.2d 96, 100-01 (Wash. Ct. App. 1994).
 

 [39]
 

 RPC 5.5(b)(3).
 

 [40]
 

 Id.
 

 [41]
 

 T.R.,
 
 119 Nev. at 652, 80 P.3d at 1280.
 

 [42]
 

 See
 
 American Bar Association Standards for Imposing Lawyer Sanctions 3.0,
 
 Compendium of Professional Responsibility Rules and Standards (Standards)
 
 344 (1999).
 

 [43]
 

 See
 
 ABA Standards 7.3 and 7.4,
 
 Standards
 
 351.
 

 [44]
 

 ABA Standards 8.3(b) and 8.4,
 
 Standards
 
 352.
 

 [45]
 

 ABA Standard 9.22,
 
 Standards
 
 352-53.