IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF DISCIPLINE OF
WILLIAM H. GAMAGE, BAR NO. 9024.

No. 77956

FILED

JUN 21 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

*ORDER OF SUSPENSION*

This is an automatic review of a Southern Nevada Disciplinary Board hearing panel's recommendation that attorney William Gamage be suspended for five years and one day based on 6 violations of RPC 8.1(b) (bar admission and disciplinary matters); 4 violations of RPC 1.3 (diligence); 3 violations each of RPC 1.15 (safekeeping property); RPC 8.4(c), (d) (misconduct); and RPC 3.2 (expediting litigation); and one violation each of RPC 1.1 (competence); RPC 1.15 (fees); RPC 1.16 (declining or terminating representation); and RPC 3.4(c) (fairness to opposing party and counsel; knowingly disobeying an obligation under the rules of a tribunal). Because no briefs have been filed, this matter stands submitted for decision based on the record. SCR 105(3)(b).

The charges are deemed admitted because Gamage failed to respond to the complaint.[1] The admitted facts establish that Gamage violated the above-referenced rules with regard to his representation of

---

[1]The State Bar sent the bar complaint and notice of intent to enter default to Gamage through first-class mail and certified mail at his SCR 79 address and an alternative address, as well as through email. Gamage's failure to respond resulted in entry of a default judgment. Following default and the disciplinary hearing, Gamage was permitted to provide mitigation information to the hearing panel.

19-26805

eight clients in civil and criminal matters from 2013-2018. Among other things, Gamage misrepresented the statuses of his clients' cases; failed to perform legal services; failed to distribute client funds; misappropriated over $580,000 in client funds; and failed to adequately respond to his clients, the courts, and the State Bar.

Turning to the appropriate discipline, we review the hearing panel's recommendation de novo. SCR 105(3)(b). Although we "exercise independent judgment," the panel's recommendations are persuasive. *In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (2001). In determining the appropriate discipline, we weigh four factors: "the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors." *In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008).

Gamage violated duties owed to his clients (competence, diligence, safekeeping property, and declining or terminating representation), the legal system (expediting litigation and fairness to opposing party and counsel), and the legal profession (failure to respond to lawful request for information from a disciplinary authority). The record supports the panel's finding that he acted intentionally with regard to his misappropriation of client funds and knowingly with regard to the remaining violations. Gamage's misconduct injured his clients. In addition to misappropriating hundreds of thousands of dollars and failing to disburse settlement funds, many of his clients are facing legal consequences as a result of his inattentiveness, whereby he basically abandoned his practice. His misconduct also caused injury to the public and to the legal profession, as his deceptive behavior and failure to adequately participate in the grievance process undermines the integrity of our justice system.

 

The baseline sanction before considering aggravating and mitigating circumstances is disbarment. *See* Standards for Imposing Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards*, Standard 4.11 (Am. Bar Ass'n 2017) ("Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."); *id.,* Standard 4.41 (indicating that disbarment is generally appropriate when a lawyer "causes serious or potentially serious injury to a client" by abandoning the practice, "knowingly fail[ing] to perform services for a client," or "engag[ing] in a pattern of neglect with respect to client matters"). The record supports the panel's findings of five aggravating circumstances (prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, multiple offenses, vulnerability of victims), and four mitigating circumstances (personal and emotional problems, full and free disclosure to the disciplinary authority based on post-default cooperation, character and reputation, interim rehabilitation).

Considering all the factors outlined in *Lerner,* and because disbarment is irrevocable in Nevada, *see* SCR 102(1), unlike in many other states, *see* Brian Finkelstein, *Should Permanent Disbarment Be Permanent?*, 20 Geo. J. Legal Ethics 587, 590-91 (2007) (recognizing that the majority of states permit reinstatement after disbarment), we agree with the hearing panel's recommendation for a lengthy suspension and conditions for reinstatement. As Gamage explained post-hearing, personal and emotional problems contributed to his failure to perform legal services and his continued misappropriation of client funds, and he has since sought to account for his actions and provide restitution to his clients and lienholders. Accordingly, we conclude that the recommended five-year-and-one-day suspension is sufficient to serve the purpose of attorney discipline—

SUPREME COURT
OF
NEVADA

(O) 1947A

3

to protect the public, the courts, and the legal profession. *State Bar of Nev. v. Claiborne*, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988).

We hereby suspend Gamage from the practice of law in Nevada for a period of five years and one day, the term of which shall be retroactive to May 11, 2018, the date on which Gamage was temporarily suspended. Gamage shall pay restitution to clients and lien holders as provided in the documents below, with the restitution sums subject to reduction pending receipt of documentation showing reasonable fees and costs and negotiations with lien holders. William Gamage shall be jointly and severally responsible with Amy Gamage for the payment of restitution. Funds paid to clients through the State Bar Client Security Fund shall be reimbursed to the fund. All clients and lien holders shall be paid in full before any application for reinstatement. Additionally, William Gamage shall pay the actual costs of the disciplinary proceeding, including $2,500 under SCR 120 within 60 days of the date of this order. The State Bar shall comply with SCR 121.1.

It is so ORDERED.

_____, C.J.
Gibbons

_____Pickering_____, J.
Pickering

_____Parraguirre_____, J.
Parraguirre

_____Stiglich_____, J.
Stiglich

_____Cadish_____, J.
Cadish

HARDESTY, J., with whom SILVER, J., agrees, dissenting:

Disbarment is the presumptive discipline in this matter based on Gamage's violations of RPC 1.3 and 1.15. Standards for Imposing

SUPREME COURT
OF
NEVADA

(O) 1947A

Lawyer Sanctions, *Compendium of Professional Responsibility Rules and Standards*, Standards 4.11 and 4.41 (Am. Bar Ass'n 2017) [hereinafter *ABA Standards*]. The majority acknowledges as much but then agrees with the hearing panel that a lengthy suspension is sufficient to serve the purpose of attorney discipline, considering the mitigating factors and permanent nature of disbarment in Nevada. I respectfully dissent because none of the relevant factors overcome the presumption of disbarment in this case.

The misconduct at issue is egregious, particularly the conversion of client funds entrusted to Gamage. As the Indiana Supreme Court has observed, "Few other acts of misconduct impugn the integrity of the Bar or place the public more at risk than the misuse of client funds." *Matter of Frosch*, 643 N.E.2d 902, 904 (Ind. 1994). That observation is particularly apt in this case considering the hearing panel's findings as to Gamage's intent and the injury to his clients, all of which are supported by the record. The hearing panel found that Gamage acted with intent when he converted clients' personal injury settlement funds to his own use, meaning that he acted with a "conscious objective or purpose to accomplish a particular result." *Id.* at 452. This is "the most culpable mental state" under the ABA standards. *Annotated Standards for Imposing Lawyer Sanctions* § 3.0 (Am. Bar Ass'n 2015) [hereinafter *Annotated Standards*]. The hearing panel further found that Gamage's intentional conversion of client funds caused actual harm to his clients, which the panel appropriately described as "extreme" given that many of the clients received none of their settlement funds and faced collections over unpaid liens that could negatively impact their credit ratings and expose them to legal action. Equally egregious, Gamage repeatedly failed to diligently represent his

clients and ultimately abandoned his practice without taking the necessary steps to withdraw as counsel for his clients with pending matters, many of whom faced criminal charges.

The aggravating factors found by the hearing panel and supported by the record support the presumptive discipline in this case. Three of those factors are particularly significant. First, Gamage acted with a dishonest or selfish motive, converting hundreds of thousands of dollars in client funds entrusted to him for his own purposes. Although he suggested that he needed the money to keep his practice afloat so that he could continue to employ his staff and help clients, that is no excuse to misappropriate funds and the record shows that he also converted the client funds entrusted to him to pay personal expenses. Two other aggravating factors demonstrate that Gamage's violations of the professional conduct rules were not an isolated lapse in judgment or oversight. In particular, he engaged in a pattern of misconduct by converting numerous clients' funds over a period of years, and he committed multiple offenses by violating a number of different professional conduct rules multiple times.

Mitigating factors can militate against disbarment. SCR 102.5(2); *ABA Standards, supra* at 451. When both aggravating and mitigating factors are present, we must weigh them against each other to determine whether the mitigating factors support discipline less than the presumptive discipline. *Annotated Standards, supra* § 9.1. After engaging in that weighing process, this court has imposed discipline less than disbarment in cases implicating Standard 4.11 when there are substantial mitigating factors; typically, when a severe mental disability or chemical dependency that caused the misconduct has been corrected and the attorney has made full restitution or significant strides toward full restitution.

 

*See, e.g., In re Disciple of Harris*, Docket No. 57507 (Order of Suspension, Feb. 24, 2012) (imposing suspension rather than disbarment for misappropriation of approximately $788,000 from client trust accounts where attorney self-reported misconduct, repaid all money to the client trust accounts with interest before the disciplinary hearing, no longer had access to the firm's business and trust accounts, allowed another attorney to supervise his performance, and had successfully completed treatment for alcoholism and other mental disorders that had caused his misconduct). Considering the mitigating factors found by the panel in this case and weighing them against the aggravating factors and the repeated and egregious misconduct, I am not convinced that this is a case where the court should deviate from the presumptive discipline of disbarment.

As the hearing panel recognized, the mitigating factor based on full and free disclosure to the disciplinary authority is undercut by Gamage's failure to respond to the State Bar during the discipline investigation or to respond to the complaint, leading the panel to enter a default. Although Gamage eventually testified and made full disclosure, he did so only after entry of the default and a formal hearing at which a panel recommended that he be disbarred. And while Gamage clearly experienced personal and emotional problems during the relevant time that are both compelling and unfortunate, they do not in my opinion mitigate the repeated and egregious professional misconduct spanning several years.

The remaining two mitigating factors found by the hearing panel are similarly inconsequential. First, the character-or-reputation mitigating factor appears to be supported solely by Gamage's testimony about his background and good character. Although the hearing panel found this mitigating factor unanimously and, like bar counsel, I have no reason to doubt Gamage's testimony in this respect, I am not convinced this

factor should be given much weight. *See generally* Leslie C. Levin, *The Emperor's Clothes and Other Tales About the Standards for Imposing Lawyer Discipline Sanctions*, 48 Am. U. L. Rev. 1, 54-58 (1998) (discussing probative value of character and reputation evidence and its misuse to the benefit of well-connected attorneys and suggesting that "character and reputation evidence should be afforded relatively little weight in the sanctioning decision"). Second, the significance of the interim rehabilitation mitigating factor is unclear in this case. When mentioning the factor, Gamage focused on his efforts to seek mental health treatment (which he had not done as of the second hearing) and chemical dependency treatment (which he had participated in). But the hearing panel did not find mental disability or chemical dependency as a mitigating factor, because there was no medical evidence (as required by SCR 102.5(2)(i)(1)) and the alleged mental disability or chemical dependency was "too far attenuated in time of the initial misconduct" to satisfy the causation required in SCR 102.5(2)(i)(2). For these reasons, I do not view the interim-rehabilitation mitigating factor as carrying much weight.

I am also concerned that the hearing panel's recommendation to deviate from the presumptive discipline set forth in the *ABA Standards* was influenced at least in part by our recent decision in *In re Discipline of Errico*, Docket No. 73995. When the hearing panel first considered this matter based solely on the default and with no mitigating factors offered by Gamage (who did not appear at the initial hearing), it recommended disbarment and restitution. By the time of the second hearing, after Gamage asked and the State Bar acquiesced to reopen the hearing so he could present mitigating factors, we had held in *Errico* that restitution cannot be imposed as discipline in conjunction with disbarment.

SUPREME COURT
OF
NEVADA

(O) 1947A

8

*In re Discipline of Errico*, Docket No. 73995 (Order of Disbarment, Oct. 10, 2018). Bar counsel brought *Errico* to the hearing panel's attention at the second hearing, implying that the panel should recommend suspension rather than disbarment so that Gamage could be required to pay restitution. That implication appears in the hearing panel's written decision, which states the panel's belief that suspension and restitution "provide a viable means to make the clients whole." I cannot fault the desire to remedy the financial harm that Gamage caused his clients. The desire to remedy the harm caused by an attorney's professional misconduct may be commensurate with the purpose of attorney discipline—to protect the public, the courts, and the profession—in some instances. For example, restitution can protect the public and the profession by showing an attorney's rehabilitation and fitness to resume or continue the practice of law. *Id.* at 3-4. But in my opinion, providing a means to remedy past harm caused by an attorney's misconduct is not the primary purpose of our current attorney discipline system; therefore, the desire to provide such a remedy should not be used to justify discipline less than disbarment where the relevant considerations (the duties violated, the attorney's mental state, the injury or potential injury, and the aggravating and mitigating factors) otherwise warrant disbarment. As we noted in *Errico*, there are more appropriate ways to provide a remedy for injured clients, like a civil action for damages or a criminal prosecution. *Id.* at 4.

The professional misconduct in this case was prolonged and egregious. It was not the result of negligence or mere oversight. It resulted in actual harm to clients of an extreme nature. The undisputed presumptive discipline is disbarment and there are significant aggravating factors. Because I believe the mitigating factors do not outweigh any of

SUPREME COURT
OF
NEVADA


(O) 1947A

those considerations, I would disbar attorney William Gamage from the practice of law in Nevada. I therefore dissent.

_____, J.
Hardesty

I concur:

_____, J.
Silver

cc: Chair, Southern Nevada Disciplinary Board
    Law Office of William Gamage
    Bar Counsel, State Bar of Nevada
    Executive Director, State Bar of Nevada
    Admissions Office, U.S. Supreme Court